665 A.2d 427

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Thomas DeBLASE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 7, 1994.

Decided Aug. 29, 1995.

Samuel C. Stretton, Philadelphia, for T. DeBlase.

Mary McNeil Killinger, Norristown, for Commonwealth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

This case presents the sole issue of whether the three year, eight month delay of appellant's trial during which this Court considered appellant's second allocatur petition violated appellant's rights to a speedy trial and to due process so as to

warrant the dismissal of all charges against him. We affirm the order of the Superior Court on the basis that no speedy trial violation occurred. The delay in appellant's murder trial resulted from his choice to appeal an interlocutory order, thereby subjecting himself to the deliberative process of the appellate courts.

For the purpose of this appeal, we adopt the Superior Court's description of the factual and procedural histories of this case:

The dead body of David Swinehart, a wealthy real estate developer, was found on January 15, 1982, in a vehicle which had been parked in an alley in Pottstown, Montgomery County. Death had been caused by bludgeoning. Charges were not filed until May 11, 1985, when DeBlase, the victim's nephew, his brother Jeffrey, Terry Lee Maute and Arthur Hall were arrested for the crime. A preliminary hearing was held for DeBlase on May 31, 1985, after which the charges of murder, robbery and conspiracy were returned to court. DeBlase was arraigned on July 24, 1985.

A portion of the Commonwealth's evidence consisted of intercepted conversations in which DeBlase had been a participant. Some conversations had been intercepted by an electronic wiretap and others by virtue of a body wire which had been worn consensually by DeBlase's brother, Jeffrey. DeBlase filed a petition to suppress this evidence and, after hearing before the Honorable Horace Davenport, was successful in suppressing evidence obtained through both the wiretap and the body wire. The Commonwealth appealed to the Superior Court which, on September 22, 1986, affirmed the suppression of the wiretap evidence but reversed the suppression of statements recorded as a result of the body wire. *See Commonwealth v. DeBlase*, 357 Pa.Super. 71, 515 A.2d 564 (1986). A petition for allocatur was granted by the Supreme Court; but, on January 22, 1988, the appeal was dismissed as having been improvidently granted. *See Commonwealth v. DeBlase*, 517 Pa. 323, 536 A.2d 339 (1988).

28

Upon remand, trial was set for June 27, 1988. DeBlase, however, retained present counsel, who filed a second motion to suppress the body wire evidence on grounds that the evidence had been obtained in violation of Article I, Section 8, of the Pennsylvania Constitution as interpreted by the Superior Court in *Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354 (1987) (en banc). This petition was also heard by Judge Davenport who, in reliance on the decision in *Commonwealth v. Schaeffer, supra,* suppressed the body wire evidence on June 23, 1988. The Commonwealth appealed. The Superior Court, on April 5, 1989, reversed the suppression order and remanded for reconsideration in light of appellate court decisions in *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988), *aff'd in Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990); *Commonwealth v. Rodriguez,* 519 Pa. 415, 548 A.2d 1211 (1988), and *Commonwealth v. Brion,* 381 Pa.Super. 83, 552 A.2d 1105 (1989), *allocatur granted,* 534 Pa. 652, 627 A.2d 730 (1993). *See Commonwealth v. DeBlase,* 390 Pa.Super. 651, 561 A.2d 817 (1989). On April 26, 1989, DeBlase filed a petition in the Supreme Court for allowance of appeal.

After twenty-one (21) months had elapsed without a decision on his petition for allowance of an appeal to the Supreme Court, DeBlase filed in the Supreme Court, on January 24, 1991, an Emergency Petition for Dismissal on grounds that his rights to a speedy trial and due process had been violated by delay in the appellate process. When the Supreme Court did not act on this [second] petition, DeBlase filed in the United States District Court for the Eastern District of Pennsylvania, on April 23, 1991, a petition for writ of habeas corpus. This petition was assigned to a federal magistrate for review.

On August 26, 1991, DeBlase filed in the federal court a petition for bail and, following hearing, was released on restrictive bail in November, 1991, after six and one-half (6½ ) years in prison. DeBlase continue[d] on bail [until August 3, 1994], ... subject to a curfew and electronic monitoring.

On December 2, 1992, the federal magistrate filed a report containing his conclusion that DeBlase's right to a speedy trial had been violated. He recommended that the charges against DeBlase be dismissed unless he be brought to trial within one hundred twenty (120) days. The prosecution then filed in the Supreme Court of Pennsylvania a petition for extraordinary relief in which it urged the Court to act on DeBlase's petition for allocatur. On December 28, 1992, three years and eight months after the petition for allowance of an appeal had been filed, the Supreme Court entered an order denying the petition for allocatur without prejudice and denying the emergency petition as moot. *Commonwealth v. Deblase,* 533 Pa. 617, 619 A.2d 699 (1992). DeBlase then filed a petition in the federal court seeking to stay the criminal proceedings in the state court pending a determination of his petition for habeas corpus. This petition was denied. Also denied was the petition for habeas corpus. This order was appealed by DeBlase to the Court of Appeals for the Third Circuit. [Appellant subsequently withdrew his appeal and the Court of Appeals dismissed the case as moot].

When the case was returned to the trial court by the Pennsylvania Supreme Court, DeBlase filed an omnibus pretrial motion in which he requested the trial court, inter alia, to dismiss the charges on grounds that his rights to a speedy trial and to due process of law had been violated by the delay in commencing trial. After a hearing, the trial court, on April 19, 1993, granted the motion and discharged the defendant.

431 Pa.Super. at 102–105, 635 A.2d at 1092–1093 (footnotes omitted).

The Commonwealth appealed appellant's discharge to the Superior Court. Pending the appeal, the federal court dissolved its order permitting appellant to stay confined at his residence subject to electronic monitoring. And, because Montgomery County Pretrial Services did not have electronic monitoring capabilities, the Montgomery County Court of Common Pleas revoked appellant's bail. The Superior Court,

by its order dated January 7, 1994, reversed the trial court's discharge order, finding (1) the delay in appellant's trial attributable to his appellate litigation of pretrial suppression motions did not violate his speedy trial rights; and (2) appellant presented no evidence of specific prejudice from the three year, eight month delay during which this Court considered appellant's second Petition for Allowance of Appeal.[1] Following the order by which the Superior Court denied appellant's motion for reargument or reconsideration, appellant then filed for allowance of appeal to this Court which we granted on July 13, 1994.

█ A speedy trial analysis mandates a two-step inquiry: (1) whether the delay violated Pennsylvania Rule of Criminal Procedure 1100; and, if not, then (2) whether the delay violated the defendant's right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution. *See Jones v. Commonwealth*, 495 Pa. 490, 499, 434 A.2d 1197, 1201 (1981) ("although Rule 1100 was designed to implement the constitutional rights of an accused to a speedy trial, ... constitutional guarantees [to a speedy trial] continue to provide a separate basis for asserting a claim of undue delay in appropriate cases") (citations omitted).

### *Pennsylvania Rule of Criminal Procedure 1100*

█ We therefore begin with an analysis of our Rules of Criminal Procedure. This Court promulgated Rule 1100 to give substantive effect to the United States Supreme Court's observation that state courts could, pursuant to their supervisory powers, establish fixed time periods within which criminal cases must normally be brought by the Commonwealth. *Com-*

---

1. The parties stipulated below that the focus of this appeal remains only on the three year, eight month delay between the point at which appellant filed his petition with this Court on April 26, 1989, and at which this Court denied that petition, December 28, 1992. *See* Brief for Appellant at 24–25; 27–28. *See also* Brief for Appellee at 5. Hence, this case presents the sole issue, identified *supra*, of whether the three year, eight month delay of appellant's trial due to this Court's consideration of appellant's allocatur petition constituted a violation of appellant's rights to a speedy trial and to due process so as to warrant the dismissal of all charges against him.

monwealth v. Terfinko, 504 Pa. 385, 391, 474 A.2d 275, 278 (1984) (referring to Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Rule 1100 provides that a trial must commence at most no later than 365 days from the date on which the criminal complaint is filed unless there is excusable delay caused by the defendant, his counsel or court congestion. Pa.R.Crim.P. 1100(a)(3). "Excusable delay" for purposes of Rule 1100 review includes delay caused by appellate review of pretrial motions. Jones, supra, 495 Pa. at 497–498, 434 A.2d at 1200–1201 (delay of two and one-half years did not violate Rule 1100 since timely appellate review of suppression motion divested the trial court of authority to proceed, and thus acted as an automatic supersedeas of the rule). Accord Commonwealth v. Marconi, 523 Pa. 342, 346, 567 A.2d 628, 630 (1989) (120–day limitation period for retrial set forth in speedy trial rule commences on date that all appeals are disposed of and record is remanded from appellate court); Commonwealth v. Ferri, 410 Pa.Super. 67, 71, 599 A.2d 208, 210 (1991), appeal denied, 534 Pa. 652, 627 A.2d 730 (1993), cert. denied, —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 540 (1994) (four year delay incident to Commonwealth's interlocutory appeal from order severing drug conspiracy charges from homicide charges was excludable time under speedy trial rule); Commonwealth v. Reiprish, 350 Pa.Super. 56, 59, 504 A.2d 240, 242 (1986) (two month trial delay was excludable since notice of appeal acts as a stay to exclude the appeal time for purposes of 180–day speedy trial period under Rule 1100); Commonwealth v. Coleman, 341 Pa.Super. 160, 162, 491 A.2d 200, 201 (1985) (Commonwealth's unsuccessful two-year interlocutory appeal tolled the statutory speedy trial time). Therefore, since the only delay at issue is the period of time this Court took to consider appellant's allocatur petition, such lapse of time constituted "excusable delay" under Jones. In turn, since "excusable delay" does not count towards a Rule 1100 violation, no Rule 1100 violation occurred in this case.

### Constitutional Guarantees of a Speedy Trial

Having found no Rule 1100 violation, our remaining inquiry is whether the delay at issue violated appellant's

constitutional rights to a speedy trial and thereby deprived appellant of due process of law under the Fifth Amendment of the United States Constitution. The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution guarantee a criminal defendant the right to a speedy trial.[2] Pursuant to these constitutional guarantees, this Court will analyze and weigh, in accordance with the U.S. Supreme Court's speedy trial analysis established in *Barker v. Wingo, supra,* the following four factors: (1) whether the pretrial delay was uncommonly long; (2) whether the government or the criminal defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice because of the delay. *Barker, supra,* 407 U.S. at 530, 92 S.Ct. at 2191–92. A finding in the defendant's favor of any one of the four factors, standing alone, does not constitute a speedy trial violation. *Id.* at 533, 92 S.Ct. at 2193–94. Rather, each of the four factors are related and each must be weighed carefully in the court's evaluation of a criminal defendant's claim that his speedy trial rights were violated. *Id.*

### *Length of the Delay and Appellant's Assertion of his Rights*

With respect to the first and third of the *Barker* factors, the Commonwealth concedes that both must be weighed in appellant's favor. Brief for Appellee at 7. We agree that the record in this case demonstrates that the three year, eight month period in which this Court took to dispose of appellant's Petition for Allowance of Appeal constituted an uncommonly long pretrial delay and that appellant diligently and consistently asserted his right to a speedy trial. Therefore, these

**2.** The Sixth Amendment guarantees state criminal defendants the right to a speedy trial by operation of the Fourteenth Amendment's Due Process Clause. *Klopfer v. North Carolina,* 386 U.S. 213, 222–223, 87 S.Ct. 988, 993–94, 18 L.Ed.2d 1 (1967). Further, Article I, Section 9 of the Pennsylvania Constitution protects a criminal defendant's right to a speedy trial co-extensively with the Sixth Amendment to the United States Constitution. *Commonwealth v. Hailey,* 470 Pa. 488, 493–494, 368 A.2d 1261, 1264 (1977).

two factors will be considered as weighing in appellant's favor.[3]   We now turn to *Barker*'s factors two and four.

### Responsibility for the Delay

■   The second *Barker* factor inquires into responsibility for the delay.   Generally, no speedy trial violation arises from the delay of a criminal defendant's trial brought about by the normal litigation of claims related to the ensuing trial.   *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986).   In such cases, a criminal defendant bears the heavy burden of showing an unreasonable delay caused by the prosecution in that appeal, or a wholly unjustifiable delay by the appellate court.   *Loud Hawk* at 316, 106 S.Ct. at 656–57.

The foundation of this rule lies in the notion that appellate review of suppression motions concerning important issues of criminal justice serves important public interests.   *Jones, supra*, 495 Pa. at 500–501, 434 A.2d at 1202.   Indeed, when weighed against a defendant's speedy trial rights, the public's interest in thoroughly-considered and well-reasoned appellate opinions where an individual is charged with criminal conduct must be given at least equal consideration:

> It has long been a rule that when a defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events. . . .   [This rule] has been thought wise because it protects the societal interest in trying people accused of crime, rather than granting them immunization because of a legal error at a previous trial, and because it enhances the probability that appellate courts will be vigilant to strike down previous convictions that are tainted with reversible error. . . .   These policies, so carefully preserved in this Court's interpretation given the Double Jeopardy Clause, would be seriously undercut by [an] interpretation given the Speedy Trial Clause [that raised a Sixth Amendment obstacle to retrial following successful attack on conviction].

**3.**   The Superior Court credited these considerations to appellant's favor as well.   431 Pa.Super. at 108, 635 A.2d at 1095.

*Loud Hawk, supra,* 474 U.S. at 313, 106 S.Ct. at 655 (citation omitted).

■ *Loud Hawk* involved facts very similar to those in the instant matter in that neither Loud Hawk nor appellant had been tried on the charges leveled against them and both Loud Hawk and appellant invoked the appellate process to obtain a more advantageous trial posture. When a criminal defendant petitions for appellate review in this Court, he necessarily risks a relatively slower, more deliberative process than that available with either the trial courts or intermediate appellate courts of this Commonwealth. The Superior Court's review for errors in the trial court's pretrial rulings and guilt determination almost inevitably implicate a quicker analysis aided by principles of *stare decisis* and well-settled legal pronouncements by this and other courts. By contrast, this Court engages in a more comprehensive legal and constitutional review of the issues raised by a particular case. Further, given that this Court's opinions have a state-wide and precedentially binding impact on all other courts situated in this Commonwealth, this Court's determinations affect more than just the litigants named in a particular case, thereby necessarily requiring a deliberative consideration of the issues, not constrained by significant temporal restrictions. Accordingly, when a criminal defendant petitions for review with this Court, he concurrently divests the trial court of its jurisdiction and, consequently, divests the trial court of the power to proceed with a trial while the deliberative appellate process takes its course. *Jones, supra,* 495 Pa. at 497–498, 434 A.2d at 1200–1201.

■ In short, a defendant who resorts to an interlocutory appeal of a pretrial motion normally should not be able upon return to the trial court to reap the reward of dismissal for failure to receive a speedy trial. *Loud Hawk, supra,* 474 U.S. at 316, 106 S.Ct. at 656. Rather, as the U.S. Supreme Court noted in *Loud Hawk,* "[h]aving sought the aid of the judicial process and realizing the deliberateness that a[n appellate] court employs in reaching a decision, the defendants are not

now able to criticize the very process which they so frequently called upon." *Id.* (citation omitted). We agree.

The sole question remaining before us, then, is whether appellant carried "the heavy burden of showing an unreasonable delay caused by a wholly unjustifiable delay by" this Court. *Id.* at 316, 106 S.Ct. at 656. In this regard, appellant asserts that this Court's deliberation of his petition for allowance of appeal violated his right to a speedy trial. Brief for Appellant at 23. However, rather than proving or even attempting to thoughtfully and specifically describe the "wholly unjustifiable nature" of the delay in this Court, appellant makes only bare assertions. *See, e.g., id.* at 18 (noting the "unexplained appellate delay," "the extreme and unexplained delay," and that "[t]here was no justification for this extreme appellate delay."); at 30 ("the reasons for the delay are not explained and [are] inexcusable. There is absolutely no excuse for [the delay].... The Pennsylvania Supreme Court simply did nothing for three and three quarter years and, then, still did not decide the issue but dismissed the Petition without prejudice."); and at 35–36 ("[appellant] has met his heavy burden with the existence of this kind of excessive and unjustifiable delay.... The excessive and unexplained delay in the context of [appellant's] case and incarceration clearly wasn't warranted and was highly unreasonable and unjustifiable."). We fail to discern how these naked proclamations, without more, meet the heavy burden of the "wholly unjustifiable delay" standard of proof imposed by *Loud Hawk.*

Although appellant is not privy to the inner workings or the deliberative processes of this Court, this does not excuse the fact that appellant failed to expound upon, or perhaps even ignored, the context in which he filed his petition for allowance of appeal with this Court. We will not be so remiss. In his petition, appellant asked this Court to reverse the Superior Court's determination that the Commonwealth's warrantless use of a one-party consensual body wire in appellant's home did not violate his right to privacy protected by Article I, Section 8 of the Pennsylvania Constitution. At the point in time that appellant filed his petition with this Court, however,

this Court had docketed other cases for consideration of the precise issue raised by appellant in his petition.

On December 29, 1987, almost a year and a half before issuing its remand order in appellant's case, the Superior Court decided *en banc* the case *Commonwealth v. Schaeffer*, 370 Pa.Super. 179, 536 A.2d 354 (1987) (*Schaeffer I*), finding that the warrantless use of a body wire in the home of a non-consenting individual violates Article I, Section 8 of the Pennsylvania Constitution. On December 2, 1988, this Court granted allocatur in *Schaeffer I*. 520 Pa. 596, 552 A.2d 251 (1988). On January 12, 1989, a panel of the Superior Court filed an opinion in the case of *Commonwealth v. Brion*, 381 Pa.Super. 83, 552 A.2d 1105 (1989), finding that the warrantless use of a body wire into the home of a non-consenting individual *did not* violate Article I, Section 8 of the Pennsylvania Constitution.

Then, just three months later on April 5, 1989, and with these two conflicting opinions under its belt, the Superior Court issued a *per curiam* order in appellant's case, reversing the trial court's suppression order and remanding the case for reconsideration in light of this Court's decisions in *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988) (*subsequently aff'd in Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990)), *Commonwealth v. Rodriguez*, 519 Pa. 415, 548 A.2d 1211 (1988), and its own decision in *Brion, supra*. On April 26, 1989, appellant then filed with this Court his petition for allowance of appeal of the Superior Court's order, relying on the Superior Court's opinion in \*Schaeffer I* and in anticipation of this Court's scheduled resolution of *Schaeffer I*. Appellant's April 1989 filing of his Petition for Allowance of Appeal marked the beginning of the delay period of which appellant complains in the instant matter. As is the normal practice of this Court (and, in this case, as proposed by appellant's own petition), this Court reserved disposition of appellant's Petition for Allowance of Appeal pending this Court's disposition of *Schaeffer I* since this Court's ruling in *Schaeffer I* would resolve the issue raised in appellant's Petition for Allowance of Appeal of

whether the warrantless use of a body wire into his home non-consensually violated Article I, Section 8 of the Pennsylvania Constitution and should therefore be suppressed.[4]

On August 26, 1991, while this petition was pending, appellant, who had been held without bail, filed a petition for bail in federal court. A year and three months later, on December 2, 1992, a federal magistrate issued a recommendation that the charges against appellant be dismissed unless he was brought to trial within 120 days. The Commonwealth then filed with this Court a petition for extraordinary relief in which it urged the Court to act on appellant's petition for allowance of appeal in order to bring the matter to trial and comply with the federal court order. Notwithstanding the still-pending status of *Schaeffer I*, this Court entered an order on December 28, 1992, denying appellant's petition for allowance of appeal without prejudice and denying the Commonwealth's emergency petition as moot so that appellant could proceed to trial within the time frame set forth by the federal magistrate, thus ending the delay period of which appellant complains in the instant matter. *Commonwealth v. Deblase*, 533 Pa. 617, 619 A.2d 699 (1992). Then, on June 14, 1993, this Court granted allocatur in the *Brion* case (534 Pa. 652, 627 A.2d 730 (1993)), and consolidated it for review with the *Schaeffer I* and its companion case, *Schaeffer II*.[5]

**4.** This Court heard oral argument in *Schaeffer I* on October 26, 1989, but did not issue its initial opinion in that case until June 1, 1993. Moreover, this Court heard reargument of *Schaeffer I* on January 25, 1994, and issued its final order in that case on December 30, 1994. *See* discussion *infra* footnote 6.

**5.** In *Schaeffer I*, the trial court denied the defendant's motion to suppress body wire evidence and proceeded with a trial in which Schaeffer was convicted of various drug charges. *Commonwealth v. Schaeffer*, No. 84–10, 589 (Lycoming CCP Apr. 15, 1985). On direct appeal, the Superior Court reversed the trial court's denial of the motion to suppress, finding that the warrantless use of a body wire in the home of a non-consenting individual violates Article I, Section 8 of the Pennsylvania Constitution. 370 Pa.Super. 179, 536 A.2d 354 (1987). Based on that finding, the Superior Court remanded the case for a new trial. *Id.* The Commonwealth appealed and on December 2, 1988, this Court granted allocatur, thereby staying the Superior Court's remand order. 520 Pa. 596, 552 A.2d 251 (1988).

When viewed in this context, the reason this Court's concededly lengthy consideration of appellant's petition for allowance of appeal becomes pointedly clear. In his petition, appellant relied on the Superior Court's opinion in *Schaeffer I* as the basis for asking this Court to reverse the Superior Court order in his case. When appellant filed his petition with this Court on April 26, 1989, this Court had already granted allocatur in *Schaeffer I* on December 2, 1988. 520 Pa. 596, 552 A.2d 251 (1988). Accordingly, *by appellant's own hand,* the resolution of his petition for allowance of appeal in turn was premised on this Court's resolution of *Schaeffer I.* Having premised his petition for allowance of appeal on the resolution of a specific case, appellant cannot now claim error with respect to the delay in this Court's disposition of his petition in order to consider and rule upon the very case appellant cited in his petition as the reason why the tape recording in his case should have been suppressed. Accordingly, appellant cannot reasonably claim a "wholly unjustifiable delay" by this Court's deliberation over his petition for allowance of appeal.

Further, when this Court denied appellant's petition for allowance of appeal on December 28, 1992, it relinquished jurisdiction of the case to allow the trial court to proceed to trial even though the *Schaeffer I* issue had not been resolved.

While his Petition for Allowance of Appeal lay pending in this Court, however, Mr. Schaeffer was released on bail and committed other drug offenses and, over the defendant's motion to suppress such evidence, the Commonwealth again introduced body wire evidence to convict him of these new charges. *Commonwealth v. Schaeffer (Schaeffer II* ), No. 90–11, 032 (Lycoming CCP Sept. 10, 1991). By *per curiam* order, the Superior Court affirmed the trial court's judgment of sentence and ruling on the defendant's suppression motion. 424 Pa.Super. 649, 617 A.2d 393 (1992). On June 21, 1993, this Court granted allocatur in *Schaeffer II* and, because of the body wire suppression issue raised therein, consolidated it for disposition with *Schaeffer I* and *Brion, supra.* 534 Pa. 653, 627 A.2d 731 (1993).

On December 30, 1994, this Court issued its opinion in *Brion,* finding that the warrantless use of a body wire in the home of a non-consenting individual violates the right to privacy protected by Article I, Section 8 of the Pennsylvania Constitution. 539 Pa. 256, 652 A.2d 287 (1994). *Schaeffer I* and *Schaeffer II* only garnered the order of an equally divided court since one of the members of this Court recused himself because of his service on the Superior Court panel in *Schaeffer I* and *Schaeffer II.* 539 Pa. 271, 652 A.2d 294 (1994).

Only in this manner could the lower court proceed to adhere to the federal magistrate's December 2, 1992, recommendation that the charges against appellant be dismissed unless he be brought to trial within 120 days, an action procured by appellant himself in the federal courts.

Moreover, the principal issue raised in *Brion, Schaeffer I, Schaeffer II*, and appellant's petition for allowance of appeal posed a complex and sensitive analysis of the ever-evolving nature and reach of the right to privacy ostensibly protected by Article I, Section 8 of the Pennsylvania Constitution. This Court's decisions on that particular issue have been characteristically marked by bare majorities and strenuous dissents, indicating the thoughtful exchange process involved and the inherently time-consuming nature of attempting to form a majority coalition among the varied members of this Court on such a contentious issue of such constitutional dimension. *See, e.g., Brion, supra* (4–3 majority); *Commonwealth v. Louden,* 536 Pa. 180, 638 A.2d 953 (1994) (3–2 majority) (defendants had no justifiable expectation that conversations in their home, which were loud enough to be heard through wall of their home into adjoining home, were not subject to being intercepted); *Commonwealth v. Martin,* 534 Pa. 136, 626 A.2d 556 (1993) (4–3 majority) (probable cause and judicial warrant necessary before drugs found via canine sniff could be searched); *Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992) (4–2 majority) (blood samples taken under implied consent law violated constitution where there was no reason to believe that defendants operated vehicle under the influence of alcohol or controlled substance); *Commonwealth, Department of Environmental Resources v. Blosenski Disposal Service,* 523 Pa. 274, 566 A.2d 845 (1989) (4–2 majority) (warrantless inspection provisions of Solid Waste Management Act were constitutionally valid).

Indeed, even appellant admits that "[i]n the present case, [appellant's] position ha[d] substantial merit in that he [had] raised serious issues in the State Court [sic] system as to the applicability of the right of privacy in the case of *Commonwealth v. Schaeffer,* [370 Pa.Super. 179], 536 A.2d 354 (1987)."

Brief for Appellant at 34. Appellant's admission in this regard necessarily implies an acquiescence to this Court's deliberative process in resolving issues of "substantial merit" affecting fundamental freedoms of all individuals under the Pennsylvania Constitution.

Accordingly, for these reasons, the delay in appellant's trial brought about by this Court's deliberation of his petition for allowance of appeal cannot be legitimately considered "wholly unjustifiable" within the meaning of *Loud Hawk.* We find, consequently, that appellant did not carry the heavy burden imposed by *Loud Hawk* of showing such "wholly unjustifiable delay" by this Court. We therefore decline to weigh this consideration in favor of appellant's speedy trial claim.

### Prejudice Caused by the Delay

The fourth *Barker* factor, prejudice to the defendant, must be assessed within the context of those interests which the speedy trial right protects: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the impairment of the defense. *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193; *Commonwealth v. Glover,* 500 Pa. 524, 529, 458 A.2d 935, 938 (1983). The last consideration, impairment of or prejudice to the defense, represents the most serious of these three concerns, because the inability of a defendant adequately to properly prepare his case for trial skews the fairness of the entire system. *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193.

As to the first of these three considerations, appellant was incarcerated for two years and seven months during the three year and eight month period at issue in this case. He was released on bail for the remaining period of one year, one month.[6] We cannot say with certainty that a two year, seven month period of pretrial incarceration represents "oppressive

6. This two year, seven month incarceration period represents the period from April 26, 1989, the date appellant filed his petition with this Court, to November, 1991, the date the federal court released appellant on bail. The one year, one month bail period represents the period from the date appellant was released on bail until December 28, 1992, the date this Court denied appellant's allocatur petition.

pretrial incarceration" under these facts, especially where a person is charged with a potentially capital murder charge and given that appellant himself initiated the particular delay at issue by filing a Petition for Allowance of Appeal with this Court. *See Commonwealth v. Pounds*, 490 Pa. 621, 629–630, 417 A.2d 597, 601 (1980) (prejudice by virtue of a two year delay in the consideration of an appeal is not the type of interest which the right to a speedy trial protects) (*citing Barker, supra*, 407 U.S. at 532, 92 S.Ct. at 2193). As to the second of the three considerations, we cannot deny the anxiety and concern such incarceration has no doubt caused appellant.[7] *See Commonwealth v. Williams*, 457 Pa. 502, 507, 327 A.2d 15, 17 (1974) (it would be pure sophistry to argue that a significant pretrial delay did not cause the accused and his family severe anxiety). We also will not, however, weigh his anxiety heavily since he himself initiated the Petition for Allowance of Appeal.

On the third point, prejudice to the defense, this Court determined in *Commonwealth v. Glass*, 526 Pa. 329, 336–337, 586 A.2d 369, 372–373 (1991), that prejudice from a lengthy pretrial delay will not be presumed; rather, the defendant must demonstrate that he has suffered prejudice in fact. However, in *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the U.S. Supreme Court suggested that some speedy trial claims may survive without a showing of specific prejudice. In *Doggett*, the high court granted *certiorari* to consider a unique factual setting wherein a defendant was subjected to an 8½ year post-indictment delay but did not suffer any recognizable impairment of his liberty

---

7. While we by no means intend to minimize the grave impact of appellant's loss of liberty, the risk of such incarceration unfortunately accrues to an accused where the trial court imposes heavy bail and counsel pursues appellate resolution of numerous pretrial matters. The risk of such lengthy pretrial incarceration explains why a defense counsel may choose to pursue suppression matters on direct appeal rather than in a pretrial interlocutory appeal. Further, we note that two of appellant's alleged co-conspirators proceeded to trial and were acquitted. *Commonwealth v. Maute*, No. 2351–85 (Montgomery CCP Oct. 29, 1985); *Commonwealth v. Swinehart*, No. 4371–93 (Montgomery CCP Feb. 2, 1994).

because he was unaware of the pending charges. Thus, the Supreme Court was placed in the position of having to apply the *Barker* four-prong test where a defendant suffered no actual prejudice to his interests as a result of the lengthy pretrial delay. In Part III of its opinion, the *Doggett* Court sought to define the role of "presumptive prejudice" in the disposition of a speedy trial claim. *Id.* at 654–658, 112 S.Ct. at 2692–2694. The Court noted that a "consideration of prejudice is not limited to the specifically demonstrable, and, ... affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id.* at 655, 112 S.Ct. at 2692. On this basis, the Court determined that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* Following a detailed analysis, the Supreme Court upheld Doggett's speedy trial claim and ordered the dismissal of the indictment against him.

In Part III B of the *Doggett* opinion, the Supreme Court sought to determine the extent to which "presumptive prejudice" plays in the disposition of a speedy trial claim. In so doing, the Court first recognized the inevitability of pretrial delay in almost every case. 505 U.S. at 656, 112 S.Ct. at 2693. It then stated that "if the Government had pursued [the defendant] with reasonable diligence ..., his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as [the defendant] could not show specific prejudice to his defense." *Id.* Therefore, when a court assigns to the government the responsibility for the delay in bringing a defendant to trial, it is only that conclusion which fundamentally informs a finding of presumptive prejudice.[8]

■■■ Unlike the defendant in *Doggett,* however, appellant does not blame the Commonwealth for causing the delay in his

---

**8.** The *Doggett* Court's ultimate finding that presumptive prejudice played a heavy role in Doggett's release stemmed principally from the government's negligence in bringing Doggett to trial. *See* 505 U.S. at 656, 112 S.Ct. at 2693 ("such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows").

trial. Brief for Appellant at 47. Indeed, the Commonwealth filed a Petition for Extraordinary Relief in this Court, requesting a ruling on appellant's Petition for Allowance of Appeal, indicating that the Commonwealth was apparently ready to proceed to trial during the pendency of this matter before the trial court and on appeal. Accordingly, appellant is precluded from raising the *Doggett* presumption of prejudice to his defense under these facts. Furthermore, appellant could have chosen to proceed with his trial instead of pursuing an interlocutory appeal. His choice to forego a speedy trial in favor of an interlocutory appeal cannot be counted against the Commonwealth. Therefore, we find that the Superior Court correctly determined that "before delay in the appellate process is weighed so heavily against the Commonwealth that its prosecution of [appellant] for murder is barred, the delay must cause specific prejudice." 431 Pa.Super. at 114, 635 A.2d at 1098.[9]

In order to prove a case of *specific* prejudice to the defense, appellant must prove (1) impairment of witness' memories; (2) loss of evidence; (3) loss of witnesses; or (4) other specifically articulable facts representing a substantial interference with his ability to conduct a defense. *United States v. Marion*, 404 U.S. 307, 321–322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1977). Appellant claims specific prejudice to his defense flowing from the decision of his former co-defendant, Terry Lee Maute, to now testify for the Commonwealth. In support of this claim, appellant asserts that at his 1985 trial, Maute successfully asserted an alibi defense and that now, ten years later, appellant speculates that Maute wishes to renounce that alibi defense and testify that he in fact was involved with appellant in the murder of David Swinehart. Appellant contends that when Maute testifies for the Commonwealth in appellant's trial and thereby implicates appellant in the murder, such testimony will in fact render his 1985 trial

9. "[M]oreover, delay is a two-edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden." *Loud Hawk, supra,* 474 U.S. at 315, 106 S.Ct. at 656.

testimony perjurious. However, because a perjury charge is subject to only a five year statute of limitations, Maute may not now be prosecuted for that allegedly perjurious alibi defense. In short, appellant asserts that because of the inordinate delay in this case, Maute may now implicate appellant in the murder of David Swinehart with impunity because Maute will have no reason to fear a prosecution for perjury. But a review of the record reveals that although appellant's counsel asserted that Terry Lee Maute would testify in this manner, counsel established no foundation for such an assertion:

> MR. STRETTON (defense counsel): I understand now that the Commonwealth intends to call a Terry Maute as a Commonwealth witness in its direct case. At least, that's what I've been so advised. May I ask, Mr. Castor [Assistant District Attorney for the Commonwealth], if I'm incorrect on that? Because I'll stop—
>
> MR. CASTOR: We're considering it; so proceed *on the assumption.*

N.T. 4/19/93 at 4–5 (emphasis supplied). In response, the Commonwealth argued that defense counsel's prejudice argument merely assumed:

> that the District Attorney would have arrested [Maute] for perjury and would have prosecuted him for perjury. And I as the Assistant District Attorney assigned to this case, I suspect that [it] is unlikely that I would have done that in the expectation of using [Maute] as a witness ... so the argument he would have subjected himself to a perjury conviction and, therefore, would have been ineligible to testify, and that is the prejudice [accruing to appellant's defense] is a specious argument. It assumes something that is not in evidence and, in fact, is probably unlikely to have occurred.

*Id.* at 26–27.

Defense counsel did not present Maute or any other witness to testify at the hearing to support this allegation of prejudice or to reveal the substance of Maute's potential testimony.

Nevertheless, defense counsel proceeded to argue that undue prejudice would accrue to appellant's defense if the trial court allowed the trial to take place with Maute serving as a Commonwealth witness. Without any evidence to support his argument, appellant has no basis upon which to validly claim that Maute's service as a Commonwealth witness would render Maute's alibi defense perjurious. Indeed, Maute's testimony could conceivably touch upon a wide array of matters, none of which would necessarily contradict his alibi defense. Accordingly, we find no substantive foundation in the record for appellant's argument that undue prejudice will accrue to his defense upon Maute's testimony for the Commonwealth, only mere speculation.

Moreover, even if defense counsel could have proven that Maute will testify as alleged, this is not the type of prejudice which the speedy trial rule was intended to prevent, as shown by the considerations set forth in *Marion, supra*. *Cf. Jones, supra*, 495 Pa. at 500, 434 A.2d at 1202 (no prejudice arose from the deaths of two defense witnesses and the allegedly failed memories of two other defense witnesses). The speedy trial guarantee intervenes only when the loss of witnesses or evidence fundamentally impairs the process by which guilt or innocence is determined. *See Marion, supra*. Here, Maute's decision to testify against appellant, even if true, does not represent a fundamental impairment of the guilt determining process, but rather it *facilitates* the process by which appellant's guilt or innocence will be determined. As a Commonwealth witness, Maute still can be cross-examined as to the veracity of his testimony as it conflicts with his earlier successfully-asserted alibi defense and the trier of fact may give whatever credibility his testimony deserves.

Finally, a strong case may be made that appellant actually has now *benefitted* from this Court's consideration of the suppression issue he raised in his petition for allowance of appeal. While this Court deliberated appellant's petition, we were in the process of considering precisely the same issue in other pending cases (e.g., *Schaeffer I, supra* ), ultimately deciding that the warrantless use of a body wire in the home

of a non-consenting individual violates the right to privacy protected by Article I, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. Brion, supra,* 539 Pa. 256, 652 A.2d 287 (1994). Our resolution of the issue in this regard represents a boon to appellant's defense since, as a rule, there is generally little evidence that is stronger than the very spoken words of an accused uttered at a time when he safely feels that they will never be used against him nor return to haunt him in the form of a tape recording. Serendipitously, appellant's speedy trial motion, Judge Salus' relief grant thereof, and the instant appeal, even though causing another delay in his trial of approximately two years and four months, have worked to appellant's favor in that this Court's resolution of *Brion* would appear to favor appellant's defense against the charges. Accordingly, appellant cannot claim substantial prejudice under these facts. We therefore decline to weigh this consideration in favor of appellant's speedy trial claim.

### Conclusion

Weighing each of the four *Barker* factors on these facts, we cannot hold that the period of delay in appellant's trial of which appellant complains constituted a violation of appellant's rights to a speedy trial or to due process so as to warrant the dismissal of all charges against him. We therefore affirm the order of the Superior Court and remand the matter to the trial court for proceedings consistent with this opinion.

MONTEMURO, J., is sitting by designation.