COMMONWEALTH of Pennsylvania, Appellee,

v.

Darrin WILLIAMS, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 2, 1999.

Filed March 1, 1999.

Glen H. Ridenour, II, Philadelphia, for appellant.

Michael R. Acker, Asst. Dist. Atty., Philadelphia, for Commonwealth, Appellee.

Before JOHNSON, SCHILLER and BROSKY, JJ.

BROSKY, J.

¶ 1. Darrin Williams appeals, *nunc pro tunc*, from the judgment of sentence of the trial court following his bench trial convictions of rape, indecent assault and simple assault. On September 26, 1994 he was sentenced to an aggregate term of imprisonment of 3–7 years. On October 14, 1994 appellant filed a direct appeal but the appeal was withdrawn on December 6, 1994. On November 30, 1995 Appellant filed a PCRA petition, requesting that his direct appeal rights be reinstated. The PCRA request was granted, and this *nunc pro tunc* appeal followed.

¶ 2 Appellant's statement of questions presented is as follows.

1. Did the trial court err when it denied Appellant's motion to dismiss the charges against him for violations of his statutory and constitutional rights to a speedy trial?

2. Was Appellant denied his state and federal constitutional rights to effective assistance of counsel when his counsel failed to properly represent his rights to a speedy trial by not aggressively asserting his rights and entered into a stipulation with the Commonwealth, which miscalculated the days of excludable delay?

Appellant's Brief at 2. We affirm the judgment of sentence of the trial court.

¶ 3 On December 31, 1991 Appellant raped and assaulted the victim, Paige Canady, who was the mother of his four-month old son.[1] On January 2, 1992 Appellant was arrested; a criminal complaint was filed on that date. On January 7, 1992 a preliminary hearing was conducted and Appellant was held on all charges; he was released on bail.[2]

¶ 4 On January 28, 1992 Appellant still had not retained counsel and the case was continued until February 20, 1992. On February 20, 1992 Thomas H. Purl, Esquire entered an appearance on behalf of Appellant. The Honorable James J. Fitzgerald then scheduled the next hearing for March 12, 1992 and ruled the time excludable. On March 12, 1992 Appellant's case was continued by the trial court and scheduled for a three-day jury trial commencing on April 29, 1992; discovery was ordered to be completed by March 19, 1992. On April 29, 1992 defense counsel's advance defense request for a continuance for further investigation was granted;[3] trial was scheduled for July 6, 1992.

¶ 5 On July 6, 1992 both defense counsel and the Commonwealth requested continuances: The Commonwealth stated that it needed time to perform the DNA testing of Appellant's blood sample and defense counsel requested additional time to prepare a defense. Additionally, defense counsel complained that Appellant was not meeting his financial obligations toward payment for his defense. The Honorable James A. Lineberger granted the joint request for a continuance until September 29, 1992 and ordered Appellant to "complete his financial arrangements with counsel or bail to be revoked." Trial Court Order, 7/6/92.

¶ 6 On September 29, 1992 Appellant failed to appear in court and Judge Lineberger issued a bench warrant for Appellant's arrest.

¶ 7 On December 3, 1992 Appellant surrendered himself to authorities. Judge Lineberger continued the case until December 9, 1992. On December 9, 1992 a hearing was held and Appellant was sentenced to 5 months and 29 days imprisonment for contempt for failure to appear on September 29, 1992; additionally, Appellant's counsel, Mr. Purl, was permitted to withdraw and the Defender's Association of Philadelphia was appointed to represent Appellant. Judge Lineberger continued the case until March 1, 1993 due to a busy docket and the continuance was ruled excludable by the trial court. N.T., 12/9/92, at 9–10.

¶ 8 On March 1, 1993 the trial court stated that it "was engaged with other matters" and the case was continued until April 1, 1993. On March 3, 1993 defense counsel filed a petition to allow testimony under the Rape Shield Law.

¶ 9 Prior to April 1, 1993 defense counsel made an advance defense request for a continuance for further preparation of witnesses. The trial court continued the trial until July 19, 1993, with the continuance charged to the defense and ruled excludable time.

¶ 10 On July 19, 1993 Judge Lineberger was engaged in another trial and Appellant's case was continued until September 30, 1993. On September 30, 1993 Appellant requested a jury trial; hence, the case was continued until November 4, 1993 to accommodate Appellant's request.

¶ 11 On November 4, 1993 Judge Lineberger was engaged in another jury trial and Appellant's case was continued until January 5, 1994, which was the earliest available date on the trial court calendar.

¶ 12 On January 5, 1994 the Honorable Edward J. Bradley continued Appellant's case until April 18, 1994, which was the earliest available court date. On January 18, 1994 defense counsel filed a motion to dismiss.

---

1. Appellant was married to another woman.

2. As a condition of bail, all defendants agree to appear at all future hearings and submit to all orders and process of the court. Pa.R.Crim.P. 4005.

3. The Commonwealth had Appellant's blood sample sent for DNA testing but had still not received the laboratory test results.

¶ 13   On April 14, 1994 defense counsel filed an additional notice of possible alibi defense.

¶ 14   On April 18, 1994 Appellant requested a change from a jury trial to a bench trial. Judge Bradley continued the case to the next day, April 19, 1994, the earliest available trial date.

¶ 15   On April 19, 1994 Judge Bradley was engaged in another trial and Appellant's case was continued for three more days, until April 22, 1994, the earliest possible date consistent with the trial court calendar.

¶ 16   On April 22, 1994 Appellant's trial began.   Appellant was found guilty of the instant crimes and this motion to dismiss pursuant to Pa.R.Crim.P. 1100 was denied.

¶ 17   Appellant first claims that the trial court erred in failing to grant his motion to dismiss pursuant to Pa.R.Crim.P. 1100.

¶ 18   Pa.R.Crim.P. 1100 states,

. . . .

(a)(2) Trial in a court case in which a written complaint is filed against the defendant, where the defendant is incarcerated on that case, shall commence no later than 180 days from the date on which the complaint is filed.

(3) Trial in a court case in which a written complaint is filed against the defendant, where the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint if filed.

. . . .

(c) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 1100;

(3) such period of delay at any stage of the proceedings as results from:

(i) the unavailability of the defendant or the defendant's attorney;

(ii) any continuance granted at the request of the defendant or the defendant's attorney.

. . . .

*Id.*

¶ 19   In reviewing a Rule 1100 claim, we are "limited to the evidence on the record of the Rule 1100 evidentiary hearing and the findings of the trial court." *Commonwealth v. Stilley*, 455 Pa.Super. 543, 689 A.2d 242, 248 (1997).   "We must view the facts in the light most favorable to the prevailing party, in this case the Commonwealth." *Id.*   "The court shall exclude any period of delay which is a result of any continuance granted at the defense's request." *Id.*   The period of time between a defendant's motion to dismiss pursuant to Rule 1100 and the trial court's rendering a decision on the motion is excludable time under Rule 1100. *Id.* at 250.

¶ 20   Our Supreme Court stated in *Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176 (1993),

Judicial delay can support the grant of an extension of the Rule 1100 rundate. [W]here the delay is due to congest court dockets, the trial court is to establish that: it has devoted a reasonable amount of its resources to the criminal docket and that it scheduled the criminal trial at the earliest possible date consistent with the court's business.   While the trial court may be required to arrange its docket, if possible, when judicial delay has caused a lengthy postponement beyond the period prescribed by Rule 1100, or one that implicates the constitutional right to a speedy trial, it should not be required to do so to avoid a delay of under 30 days. [Citations omitted.]

*Id.* at 243, 627 A.2d at 1181.

¶ 21   Our Court stated in *Commonwealth v. Peer*, 454 Pa.Super. 109, 684 A.2d 1077 (1996),

Our standard of review in evaluating Rule 1100 issues is whether the trial court abused its discretion in determining that the Commonwealth acted with due diligence in attempting to try the defendant

within the applicable time period. Due diligence is a fact-specific concept that is determined on a case-by-case basis. [Citation omitted.]

*Id.*

■ ¶ 22  In the instant case Appellant's criminal complaint was filed on January 2, 1992 and he was not incarcerated; hence, the original run date was January 1, 1993. However, Appellant voluntarily absented himself from his scheduled trial on September 29, 1992 and he did not surrender until December 3, 1992.

¶ 23  Our Supreme Court stated in *Commonwealth v. Steltz*, 522 Pa. 233, 560 A.2d 1390 (1989),

One's voluntary absence from a day set for trial within Rule 1100 is a waiver of that rule. Therefore, his trial thereafter is, at the reasonable convenience of the court and the prosecuting authorities. Rule 1100 is a procedural rule designed to give reasonable parameters for the commencement of trial.

It is a benefit to one charged that a trial date will be known as closely as possible on our crowded dockets. A trial date for one person is a delay for another. When they voluntarily absent themselves, for whatever reason, they go to the end of the line and must wait their turn after the convenience of the others their absence delayed. We cannot, with limited facilities, let one set the rules according to their whim, convenience or wrong.

*Id.* at 235, 560 A.2d at 1391.

¶ 24  Hence, Appellant waived any claim under Rule 1100 and his scheduled trial was at the reasonable convenience of the trial court and the Commonwealth. *Id.* We will therefore examine the time period from the filing of the criminal complaint, January 2, 1992, until Appellant's trial date of April 22, 1994 to determine if the actual trial date was at the **reasonable** convenience of the trial court and the Commonwealth. *Id.*

■ ¶ 25  Up until January 28, 1992 Appellant still had not retained counsel and the case was continued until February 20, 1992; this time is attributable to Appellant. On February 20, 1992 counsel entered an

appearance on behalf of Appellant and the case was continued until March 12, 1992; this time can not be attributable to the Commonwealth or the trial court since Appellant's counsel needed time to familiarize himself with the case. On April 29, 1992 the case was continued until April 29, 1992; this time is attributable to the crowded trial court docket. On April 29, 1992 defense counsel requested a continuance since the DNA tests were not completed; this continuance is attributable to both the Commonwealth and Appellant since the Commonwealth had ordered the tests after securing a sample of Appellant's blood. The case was continued until July 6, 1992.

■ ¶ 26  On July 6, 1992 both defense counsel and the Commonwealth requested continuances since the DNA tests had not been completed and the defense needed more time to prepare a defense; additionally, defense counsel complained that Appellant had not been paying him for his services. The joint request for a continuance until September 29, 1992 was granted and is chargeable to both Appellant and the Commonwealth.

■ ¶ 27  On September 29, 1992 Appellant failed to appear for trial and did not turn himself in to authorities until December 9, 1992. As we have discussed, *supra*, virtually all of the continued days from this point until the trial on April 22, 1994 were attributable to a crowded court docket or Appellant.

¶ 28  On December 9, 1992 Appellant was sentenced for his failure to appear for trial on September 29, 1992; additionally, his counsel was granted permission to withdraw and new counsel was appointed. Judge Lineberger continued the case until March 1, 1993 due to a crowded trial court docket and a request by the prosecutor. On March 1, 1993 Judge Lineberger was engaged in another trial and the case was continued until April 1, 1993. Prior to April 1, 1993 defense counsel made an advance defense request for a continuance for further preparation of witnesses; the trial court granted the request and continued the case until July 19, 1993.

¶ 29  On July 19, 1993 Judge Lineberger was engaged in another trial and the case was continued until September 30, 1993. On

September 30, 1993 Appellant requested a jury trial and the case had to be continued until November 4, 1993 to accommodate Appellant's request.

¶ 30 On November 4, 1993 Judge Lineberger was engaged in another jury trial and Appellant's case was continued until January 5, 1994, the earliest possible date on the trial court's calendar.

¶ 31 While the original run date was January 1, 1993, defense counsel and the Commonwealth stipulated that there were 403 excludable days, bringing the new run date to February 7, 1994. N.T., 4/22/94, at 4. Since the actual trial began on April 22, 1994, we need now only examine the continuances granted in 1994.

¶ 32 On January 5, 1994 Judge Bradley continued the case until April 18, 1994, the earliest available date. On January 18, 1994 defense counsel filed a motion to dismiss pursuant to Rule 1100,[4] and on April 14, 1994 defense counsel filed an additional notice of possible alibi defense.

¶ 33 On April 18, 1994 Appellant again changed his mind and requested a bench trial. The trial commenced on April 22, 1994, the earliest possible date on the trial court's calendar.

¶ 34 Subsequent to the new run date of February 7, 1994 (pursuant to the stipulation between counsel at the April 22, 1994 hearing held immediately before Appellant's trial) there were 74 days to account for until Appellant's trial began. However, the dates from January 18, 1994, the date of the filing of Appellant's motion to dismiss pursuant to Rule 1100, until addressal of the motion on April 22, 1994 were excludable. *Commonwealth v. Stilley, supra.* Hence, all of the days subsequent to February 7, 1994 were chargeable to Appellant and excludable. Consequently, there was no violation of Rule 1100.

¶ 35 Based upon the foregoing, we find that there was no Rule 1100 violation. Additionally, considering Appellant's voluntary absence from his September 29, 1992 trial,

we find that the trial court has established that Appellant's April 22, 1994 trial date was at the reasonable convenience of the trial court and Commonwealth. *Commonwealth v. Steltz, supra.* Therefore, we find Appellant's Rule 1100 claim to be meritless.

¶ 36 Appellant's next issue is a claim that "the trial court erred in denying [his] motion to dismiss on constitutional grounds." Appellant's Brief at 19.

¶ 37 Our Supreme Court stated in *Commonwealth v. DeBlase*, 542 Pa. 22, 665 A.2d 427 (1995),

The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution guarantee a criminal defendant the right to a speedy trial. Pursuant to these constitutional guarantees, this Court will analyze and weigh ... the following four factors: (1) whether the pretrial delay was uncommonly long; (2) whether the government or the criminal defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice because of the delay. A finding in the defendant's favor of any one of the four factors, standing alone, does not constitute a speedy trial violation. Rather, each of the four factors are related and each must be weighed carefully in the court's evaluation of a criminal defendant's claim that his speedy trial rights were violated.

. . . .

The fourth ... factor, prejudice to the defendant, must be assessed within the context of those interests which the speedy trial right protects: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the impairment of the defense. The last consideration, impairment of or prejudice to the defense, represents the most serious of these three concerns, because the inability of a defendant adequately to properly prepare his case for

---

**4.** Any time from the date of the filing of the motion to dismiss until its addressal by the trial court on April 22, 1994 (which is also the date of the beginning of the trial) is excludable. *Commonwealth v. Stilley, supra.*

trial skews the fairness of the entire system.

. . . .

In order to prove a case of *specific* prejudice to the defense, appellant must prove (1) impairment of witness' memories; (2) loss of evidence; (3) loss of witnesses; or (4) other specifically articulable facts representing a substantial interference with his ability to conduct a defense.

. . . .

The speedy trial guarantee intervenes only when the loss of witnesses or evidence fundamentally impairs the process by which guilt or innocence is determined. [Citations omitted.]

*Id.* at 32, 40, 43, 45, 665 A.2d at 432, 436, 438, 439.

¶ 38 In the instant case, when considering the excludable time, the stipulation reached by counsel and Appellant's voluntary absence from his September 29, 1992 trial date, we do not find that the pretrial delay was uncommonly long. Furthermore, we find that blame for the delay is borne more by Appellant than by the government. Additionally, Appellant did not file a motion to dismiss, pursuant to Rule 1100 and constitutional claims, until January 18, 1994, which is two months before his actual trial date and over one year after the original run date; hence, we find that Appellant did not assert "in due course" his right to a speedy trial. *Id.* Finally, we must determine if Appellant suffered prejudice because of the delay.

¶ 39 Appellant specifically asserts that (a) the victim, due to "lost memory", gave vague testimony regarding occurrences on the evening of the instant crimes; (b) due to "lost memory", alibi witness Charles Williams gave vague testimony regarding a party that Appellant allegedly attended at the same time that the instant crimes were being committed against the victim; (c) due to "lost memory", second alibi witness, Wayne Morris, gave vague testimony regarding the party and he could not provide the present whereabouts of the host of the party, Dante Crowley; (d) Dante Crowley could not be contacted to testify at trial; and (e) "lost was the laundry list of friends and relatives

of Mr. Crowley who could have been additional witnesses to place [Appellant] at the party." Appellant's Brief at 23, 24.

¶ 40 First, we find that the victim's alleged vague testimony regarding the events on the evening of the instant crimes tends to bolster the version of events promulgated by Appellant and his alibi witnesses at trial; the victim's alleged vague memory helped rather than hindered Appellant's case.

¶ 41 While alibi witnesses Williams and Morris may not have provided as much specific detail regarding Appellant's attendance at and the particulars of the party as Appellant had hoped for, the testimony of Appellant and the two witnesses established an alibi (albeit not found credible by the trial court) for Appellant during the evening in question. Under this factual scenario, we do not find that the loss of evidence fundamentally impaired the process by which Appellant's guilt or innocence was determined. *Commonwealth v. DeBlase, supra.*

¶ 42 The unavailability of alleged party host Dante Crowley was similarly not prejudicial to Appellant since Mr. Crowley's testimony would have been merely cumulative to that of alibi witnesses Williams and Morris. The absence of Crowley did not fundamentally impair Appellant's trial. *Id.*

¶ 43 Finally, the "laundry list" of Crowley's friends and relatives would likewise have only provided cumulative evidence had Appellant been able to obtain their identities.

¶ 44 For the foregoing reasons, we find Appellant's constitutional claims regarding his right to a speedy trial to be meritless. *Id.*

¶ 45 In Appellant's final issue, he alleges that his trial counsel was ineffective for failing "to properly represent [Appellant's] . . . constitutional . . . rights to a speedy trial by not aggressively asserting his rights and entered into a stipulation with the Commonwealth which miscalculated the days of excludable delay." Appellant's Brief at 24.

¶ 46 Our Supreme Court stated in *Commonwealth v. Crawley*, 541 Pa. 408, 663 A.2d 676 (1995),

In order to establish an ineffective assistance of counsel claim, the appellant must meet [a] three-prong test.... Appellant must establish that the issue underlying the claim of ineffectiveness has merit. Second, appellant must establish that the course of action or inaction chosen by counsel had no reasonable basis in advancing appellant's interests. Third, appellant must establish that he suffered prejudice as a result of the counsel's action or inaction. Prejudice in this context has been defined to mean that appellant must establish that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different. Appellant bears the burden of proving all three prongs of this standard. Moreover, the law in Pennsylvania presumes that counsel was effective. [Citations omitted.]

*Id.* at 414, 663 A.2d at 679.

¶ 47 We have already determined, *supra*, that Appellant's constitutional rights to a speedy trial were not violated since he was not prejudiced by any delay in bringing him to trial. Hence, we find that trial counsel was not ineffective regarding Appellant's constitutional rights to a speedy trial. *Id.* In regard to the stipulation regarding the 403 excludable days and its implication of Appellant's speedy trial rights pursuant to Rule 1100, we find that since Appellant's constitutional rights to a speedy trial were not violated, then Appellant can not avail himself of the prophylactic effect of Rule 1100 when asserting an ineffectiveness of counsel claim. Our Supreme Court and this Court have held that when defense counsel fails to object to a Commonwealth petition for an extension of time (or by analogy, enters into a stipulation concerning dates excludable from consideration under Rule 1100), a defendant will not be discharged unless he has been deprived of his underlying right to a speedy trial under the United States and Pennsylvania Constitutions. *Commonwealth v. Wells*, 513 Pa. 463, 469, 521 A.2d 1388, 1391 (1987)[5]; *Commonwealth*

*v. Crowley*, 502 Pa. 393, 402-03, 466 A.2d 1009, 1014–1015 (1983); *Commonwealth v. Smith*, 348 Pa.Super. 81, 501 A.2d 656, 662 (1985). Accordingly, since trial counsel was not ineffective for failing to pursue Appellant's constitutional rights to a speedy trial (since Appellant was not prejudiced) and consequently, Appellant can not assert an ineffectiveness claim regarding his Rule 1100 speedy trial rights, we find Appellant's ineffectiveness of counsel claims to be meritless. *Id.*

¶ 48 Since we have found all of Appellant's issues to be meritless, we affirm the judgment of sentence of the trial court.

¶ 49 Judgment of sentence affirmed.

¶ 50 SCHILLER, J., Concurs in the Result.

---

**5.** Although *Wells* involved an appeal under the Post Conviction Hearing Act, 42 Pa.C.S. §§ 9541–9551 (Repealed April 13, 1988), our Supreme Court, in *Commonwealth v. Kimball*, —— Pa. ——, 724 A.2d 326 (1999), stated that the prejudice standard regarding an ineffectiveness of counsel claim is the same on direct appeal and under the PCRA. *Id.*