J-S12036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DEVIN MICHAEL MILLER | : | |
| | : | |
| Appellant | : | No. 1011 MDA 2022 |

Appeal from the Judgment of Sentence Entered July 6, 2022
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000726-2021

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 20, 2023**

Appellant, Devin Michael Miller, appeals from the judgments of sentence imposed by the Centre County Court of Common Pleas after a jury found him guilty of driving under the influence (DUI) of a Schedule I controlled substance (as a fourth offense) and false identification to a law enforcement officer, and the lower court found him guilty of driving while operating privilege is suspended or revoked - DUI related (as a third or subsequent violation), driving while operating privilege is suspended or revoked – DUI related with a controlled substance in blood (as a third or subsequent violation), failing to wear protective headgear while operating a motorcycle, careless driving, and failing to use a traffic signal.[1]   He challenges the denial of his pre-trial motion

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(d)(1)(i), 4914(a), 1543(b)(1)(iii), 1543(b)(1.1)(iii), 3525(b), 3714(a), and 3334(a), respectively.

to dismiss his case, alleging that the Commonwealth violated his right to a speedy trial under the Pennsylvania and United States Constitutions. Upon review, we affirm.

The facts underlying Appellant's convictions concern a motor vehicle stop that occurred at 2:29 a.m. on August 2, 2020, near the intersection of Pugh Street and Beaver Avenue in State College, Centre County, Pennsylvania. N.T. 4/29/22, 41-43, 45. Police Officer Kevin Orndorff saw Appellant driving a motorcycle with a female passenger, later identified as Shelly Payne, traveling on Beaver Avenue near Fraser Street. *Id.* at 42, 46. Appellant had a helmet with a full-face shield sitting on top of his head. *Id.* at 42, 100. Officer Orndorff turned around to pursue Appellant with the intention of conducting a traffic stop because Appellant was not properly wearing the helmet with the shield covering his face. *Id.* at 42-43. As Appellant came to the intersection of Pugh Street and Beaver Avenue, Officer Orndorff saw him swerve from the right lane to the left lane of the one-way, two-lane street without using a turn signal. *Id.* at 43, 45. After the officer waited for the traffic light at that intersection to turn green, he initiated the stop of Appellant's motorcycle as Appellant was parking and alighting from the motorcycle. *Id.* at 44-45.

The relevant events of the traffic stop and the ensuing investigation were recorded by a camera worn by Officer Orndorff and a dash camera in his patrol car. N.T. 4/29/22, 48-49, 53; Commonwealth Exhibit 1 (Dash Cam Video); Commonwealth Exhibit 2 (Body Worn Camera Video). Appellant

admitted that his helmet had been "up," remarking, "my fault." N.T. 4/29/22, 55, 87. He was unable to produce a driver's license after repeated requests. *Id.* at 55-56. Appellant identified himself as "Tershar" to the officer, and said that his identification card was in Ms. Payne's bag. *Id.* at 56-57. Officer Orndorff later found out that "Tershar Miller" was Appellant's cousin. *Id.* at 57. At Appellant's request, the officer conducted a pat-down of Appellant during which he smelled a strong odor of marijuana coming from Appellant's body. *Id.* Appellant then produced an identification card for his cousin, Tershar. *Id.* at 58-59. He said that he recently lost his wallet which contained his driver's license. *Id.* at 58. Officer Orndorff determined that the identification card was associated with a suspended driver's license. *Id.* at 60.

Officer Orndorff confronted Appellant about the suspended license associated with the identification card and the observed weaving of the motorcycle and proceeded to subject Appellant to field sobriety testing from the ARIDE curriculum.[2] N.T. 4/29/22, 61, 63-69. The officer noted various clues to identifying impairment that were evident in each of the separate tests conducted that were consistent with marijuana impairment. *Id.* at 65, 67,

---

[2] "ARIDE" refers to advanced roadside impaired driving enforcement training developed under the auspices and direction of the National Highway Traffic Safety Administration and the International Association of Chiefs of Police to prepare police officers and other qualified persons "to conduct various drug-impairment detection tests at roadside for use in drugged-driving investigations." ARIDE Instructor Guide, 2023, National Highway Traffic Safety Administration, at 4, available at https://www.nhtsa.gov/sites/nhtsa.gov/files/2023-04/15941-2023_ARIDE_Instructor%20Guide-tag.pdf.

69-70. The officer also conducted a breathalyzer test that indicated "a pretty low amount" of alcohol. *Id.* at 71. Appellant admitted to smoking marijuana earlier in the morning. *Id.* Officer Orndorff told Appellant that he believed that he was impaired and that he wanted to further the investigation into whether he had been driving under the influence. *Id.* at 72. Appellant then indicated that he had been involved in a minor crash and requested an ambulance. *Id.* at 71-72. After an ambulance was requested, he withdrew his request to be transported in it when he found out that Ms. Payne could not ride in the ambulance with him. *Id.* at 72. Officer Orndorff subsequently arrested Appellant after he declined to be evaluated by a drug recognition expert unless Ms. Payne was by his side which the officers could not permit due to on-going COVID-19 pandemic restrictions. *Id.* at 72-73. Officer Orndorff transported Appellant to the Mount Nittany Medical Center for chemical testing that was performed after Appellant signed a Pennsylvania Department of Transportation DL-26 form, indicating his agreement to provide a blood sample. *Id.* at 73-76.

At trial, Officer Orndorff and Officer Dean Woodring, who was also present for the field sobriety tests, opined that they believed that Appellant was under the influence of marijuana to the point that he was incapable of safely operating a motor vehicle. N.T. 4/26/22, 74, 103. Stipulations of counsel indicated that, *inter alia*, the chemical testing determined that Appellant's blood contained: (1) "11-Hydroxy Delta-9 THC, which is the active metabolite of marijuana, at a concentration of 3.2 nanograms per milliliter;"

(2) "Delta-9 Carboxy THC, the inactive metabolite of marijuana, at a concentration of 26 nanograms per milliliter;" and (3) Delta-9 THC, the active ingredient of marijuana, at a concentration of 4.3 nanograms per milliliter." *Id.* at 80. Appellant was positively identified as Devin Michael Miller after his fingerprints were uploaded to the Automated Identification System (AFIS) at the Centre County Correctional Facility. *Id.* at 81-82. Appellant admitted that his name was Devin Miller after the arresting officers returned him to that facility, following the fingerprint identification. *Id.* at 82.

On March 28, 2022, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600. He acknowledged that, as of filing of his motion, 434 days had elapsed since the filing of the criminal complaint. Rule 600 Motion, 3/28/22, ¶ 9. He alleged that, at all relevant times, he had been available to defend himself in any proceedings on his charges and the Commonwealth had been aware of his address, telephone numbers, and contact information. *Id.* at ¶ 11. He also alleged that the Commonwealth had not exercised due diligence in locating and prosecuting him. *Id.* at ¶ 12. He asserted: "The delay from the time of the filing of the Criminal Complaint was without justification, and said delay was in violation of Pennsylvania Rule of Criminal Procedure Rule 600, the Sixth Amendment of the United States Constitution, and the Fourteenth Amendment of the United States Constitution." *Id.* at ¶ 13. In a brief in opposition to Appellant's Rule 600 motion, the Commonwealth noted that Appellant's counsel had informed it that Appellant was abandoning his claim under Rule 600 and pursuing dismissal based on a violation of his

constitutional right to a speedy trial. Commonwealth's Response to Rule 600 Motion, 4/1/22, 1.

At a hearing on the speedy trial motion, Appellant's counsel presented the speedy trial claim on federal constitutional grounds, addressing the four-factor test in **Barker v. Wingo**, 407 U.S. 514 (1972) (endorsing a balancing test to determine whether a defendant's constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution has been violated). N.T. 4/4/22, 3-4, 12. Counsel pointed out that almost two years had passed since Appellant's arrest and then characterized the entire period from the arrest until March 4, 2022, as delay: (1) the five months between the arrest and the filing of the criminal complaint (August 2, 2020 to January 19, 2021); (2) the two and one-half months between the filing of the criminal complaint and the formal arraignment (January 19, 2021 to April 8, 2021); (3) the two months between the arraignment and the preliminary hearing (April 8, 2021 to June 24, 2021); and (4) the eight months between the preliminary hearing and a scheduled trial date (June 24, 2021 to March 4, 2022). **Id.** at 3-5, 7-9. With respect to the last period of time, counsel acknowledged that a prior trial date for January 28, 2021, was rescheduled because of a Commonwealth witness's "COVID-19 exposure." **Id.** at 8. The court added that it remembered that the reason for the delay in that instance resulted from defense counsel's concern about exposure. **Id.** at 9 (the trial court: "I believe, and anyone can correct me if I'm wrong, that [Appellant's] then-serving counsel was leaving the office where she worked, leaving her

- 6 -

employment in Centre County, and expressed her own concerns about possibly being exposed to the affiant because of some activity she was going to have with her father helping her move that weekend…"). Appellant's counsel agreed that the delay from March 4, 2022, until the filing of the speedy trial motion was caused by the defense. *Id.*

Appellant claimed that two forms of prejudice supported his speedy trial claim. First, he alleged that the "Commonwealth ha[d] caused great anxiety for [him] by having th[e] criminal proceeding drag on." N.T. 4/4/22, 10-11. Second, he asserted that he suffered from the loss of evidence due to the delay. *Id.* at 11. While his counsel acknowledged that the Commonwealth's evidence had included police body camera footage and a dashcam video that began after Officer Orndorff initiated his emergency lights, counsel suggested that a delay in the filing of the charges prevented him from acquiring additional surveillance video evidence. *Id.* ("Had timely charges been filed, a thorough investigation could have been conducted, resulting in additional footage of the erratic driving from the surrounding businesses, which could have assisted in [Appellant's] defense. However, that footage would not have survived the lengthy delay, and now we are reliant on witness memory of an event almost two years later."). After hearing arguments from both parties, the court denied the speedy trial motion. *Id.* at 19.

On April 29, 2022, Appellant failed to appear for trial and a jury found him guilty *in absentia* of the DUI offense and false identification to a law

enforcement officer.[3]   Jury Verdict Slip, 4/29/22, 1; N.T. 4/29/22, 8-12, 161-62.   Afterwards, the court found Appellant guilty of the remaining offenses referenced above.   Non-jury Verdict, 4/29/22, 1; N.T. 4/29/22, 162-63. Sentencing was deferred for the preparation of a presentence investigation report.  Order, 4/29/22, 1.  On July 6, 2022, the court imposed an aggregate term of two to seven years' imprisonment consistent with the parties' recommendation based on their agreement to pre-trial stipulations.[4]   N.T. 7/6/22, 2-6.  After no post-sentence motions were filed, Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[5]   Notice of Appeal, 7/15/22, 1;

_____

[3] We note that, prior to trial, the Commonwealth represented to the trial court that an earlier trial listing on March 7, 2022, needed to be continued because Appellant was impaired when he appeared in court.  N.T. 4/29/22, 10.

[4] The aggregate sentence included concurrent prison terms of two to seven years for driving under the influence of a Schedule I controlled substance as a fourth offense, six to twelve months for false identification to a law enforcement officer, and two to four years for driving while operating privilege is suspended or revoked – DUI related with a controlled substance in blood as a third or subsequent violation.  Sentencing Order (Count 1), 7/6/22, 1; Sentencing Order (Count 6), 7/6/22, 1; Sentencing Order (Count 8), 7/6/22, 1.  Driving while operating privilege is suspended or revoked - DUI related as a third or subsequent violation merged for sentencing purposes.  Sentencing Order (Count 8), 7/6/22, 2.   Fines were imposed for the remaining summary offenses.  Sentencing Order (Count 10), 7/6/22, 1; Sentencing Order (Count 11), 7/6/22, 1; Sentencing Order (Count 12), 7/6/22, 1.

[5] On August 2, 2022, the trial court reissued sentencing orders for the summary offense counts changing the wording of the original orders to reflect how the convictions for those offenses were obtained, without affecting the fines imposed for those offenses.   Amended Sentencing Order (Count 10), 8/2/22, 1; Amended Sentencing Order (Count 11), 8/2/22, 1; Amended
*(Footnote Continued Next Page)*

Rule 1925 Order, 7/19/22, 1; Amended Rule 1925 Order, 7/22/22, 1; Rule

1925(b) Statement, 8/2/22, 1.

Appellant presents the following question for our review:

Did the trial court err by denying [Appellant's m]otion to [d]ismiss based on a violation of his speedy trial rights under Article I, Section 9 of the Pennsylvania Constitution and [the] Sixth Amendment [to] the [United States] Constitution?

Appellant's Brief at 9.

Appellant claims that the trial court erred by denying his motion to

dismiss and rejecting his claim alleging a violation of his constitutional right

to a speedy trial. Appellant's Brief at 15-22. He argues that the

Commonwealth unreasonably delayed its prosecution where a jury trial was

not conducted until 635 days after the date on which his offenses occurred.

*Id.* at 16-19. In particular, he points out that the criminal complaint was not

filed until 171 days after the offenses were alleged to have occurred, his

preliminary arraignment did not take place until 77 days after the filing of the

criminal complaint, his preliminary hearing did not take place until 72 days

_____

Sentencing Order (Count 12), 8/2/22, 1. Because we view the changes made by the court to the summary offense judgments of sentence as correcting patent typographical errors, the trial court's inherent authority to correct the orders was not limited by the fact that this appeal was pending from all of the judgments of sentences. *See Commonwealth v. Holmes*, 933 A.2d 57, 65 (Pa. 2007) (holding 42 Pa.C.S. § 5505's limits on jurisdiction do not impinge upon a trial court's inherent authority to correct patent errors despite an absence of traditional jurisdiction); *id.* at 66 (holding that where an error in sentencing was clear from the order itself and the docket sheet, the trial court's exercise of inherent power to correct a mistake was proper).

after it was originally scheduled to be held, his pre-trial conference was not held until 64 days after it was first scheduled to be held, and an original trial listing for January 28, 2022, was continued because the Commonwealth was unable to produce a witness. *Id.*

Appellant alleges three grounds for prejudice such that delay: (1) caused him to "suffer significant anxiety and concern;" (2) prevented him from developing his defense; and (3) prevented him from losing the opportunity to receive a sentence that would be partially served concurrent with another sentence that he was serving in another jurisdiction. Appellant's Brief at 20-21. As for the effect that any delay would have had on his ability to develop a defense for trial, he notes that the deterioration of his relationship with Ms. Payne while his case remained pending made her an unavailable defense witness:

> During this fifteen-month delay [*i.e.*, the period between the filing of the criminal complaint and the trial], a critical witness, Shelley Payne, had become unavailable to testify.
>
> …
>
> During the 171 days that had elapsed before the [c]riminal [c]omplaint was filed, [Appellant] no longer had a romantic relationship with the only other eyewitness. The deterioration of this relationship would have led to inevitable credibility issues had defense counsel been able to contact Ms. Payne.
>
> Being present at the traffic stop from which this case arose, Ms. Payne's testimony was critical to refute allegations that [Appellant] had ingested marijuana while in physical control of the vehicle. Rather, Ms. Payne would have testified that [Appellant] had ingested marijuana after exiting and disabling the motorcycle. Had charges been filed closer to the date of the offense, defense

- 10 -

counsel may have been able to successfully procure Ms. Payne to provide testimony at [Appellant's] preliminary hearing and subsequent trial.

*Id.* at 21-22.

As a preliminary matter, we note that Appellant's theory for prejudice based on the availability of Ms. Payne as a defense witness is waived because Appellant presented no prejudice arguments concerning Ms. Payne in his speedy trial claim argued in the hearing before the trial court. *See **Commonwealth v. Santiago***, 980 A.2d 659, 666 n.6 (Pa. Super. 2009) (citations omitted) ("[a] new and different theory of relief may not be successfully advanced for the first time on appeal"); ***Commonwealth v. Cain***, 906 A.2d 1242, 1244 (Pa. Super. 2006) (speedy trial issue waived on appeal when not properly presented to trial court); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Appellant likewise waived his claim that delay prejudiced him by causing him to lose the opportunity to serve his sentence concurrently with a term he was already serving in a separate jurisdiction. That assertion was not included in the prejudice arguments made in the pre-trial hearing. *See* N.T. 4/4/22, 10-12.

In evaluating the preserved portions of Appellant's constitutional speedy trial rights issue, "our standard of review is whether the trial court abused its discretion, and our scope of review is limited to the trial court's court findings and the evidence on the record, viewed in the light most favorable to the

prevailing party." ***Commonwealth v. Martz***, 232 A.3d 801, 812 (Pa. 2020) (citation omitted).

The Sixth Amendment to the United States Constitution, by operation of the Fourteenth Amendment's Due Process Clause, and Article I, Section 9 of the Pennsylvania Constitution guarantee a criminal defendant the right to a speedy trial, and Article I, Section 9 of Pennsylvania Constitution co-extensively protects that right with the Sixth Amendment of the United States Constitution. ***See Commonwealth v. DeBlase***, 665 A.2d 427, 432 & n.2 (Pa. 1995). The Pennsylvania Supreme Court has continued to apply the ***Barker*** balancing test where an appellant presents an independent claim premised on the constitutional guarantees to a speedy trial.[6] ***Id.*** at 431.

_____

[6] As Appellant abandoned any claim premised under the prompt trial rule under Pa.R.Crim.P. 600, we need not conduct a Rule 600 inquiry and may proceed to evaluate Appellant's discrete constitutional claim. We also note that Rule 600 appears to have been suspended from March 16, 2020 to December 10, 2021, during the judicial emergency declared in the 49th Judicial District, which includes Centre County, in the wake of the Covid-19 pandemic that began in March of 2020. ***See*** Declaration of Judicial Emergency, ***In Re: 49th Judicial District – Declaration of Judicial Emergency***, 3/16/20, P.J. Ruest (declaring a judicial emergency from March 16, 2020 to April 14, 2020, during which "[t]he operation of Rule of Criminal Procedure 600 shall be suspended"), available at https://www.pacourts.us/Storage/media/pdfs/ 20210519/010521-file-8521.pdf; Amended Administrative Order, ***In Re: 49th Judicial District – Actions Pursuant to Declaration of Judicial Emergency***, 4/6/20, P.J. Ruest (extending the judicial emergency through May 1, 2020, while continuing the Rule 600 suspension), available at https://www.pacourts.us/Storage/media/pdfs/20210519/010650-file-8932. pdf; Second Amended Administrative Order, ***In Re: 49th Judicial District – Actions Pursuant to Declaration of Judicial Emergency***, 4/23/20, P.J. Ruest (extending the judicial emergency through May 31, 2020, while continuing the Rule 600 suspension), available at https://www.pacourts.us/

*(Footnote Continued Next Page)*

Storage/media/pdfs/20210519/010725-file-9094.pdf; Third Amended Administrative Order, ***In Re: 49th Judicial District – Actions Pursuant to Declaration of Judicial Emergency***, 5/29/20, P.J. Ruest (extending the judicial emergency through July 3, 2020, while continuing the Rule 600 suspension "subject to constitutional limitations"), available at https://www.pacourts.us/Storage/media/pdfs/20210519/010801-file-9394. pdf; Fourth Amended Administrative Order, ***In Re: 49th Judicial District Judicial Emergency Order***, 6/25/20, P.J. Ruest (extending the judicial emergency through September 7, 2020, while continuing the Rule 600 suspension "subject to constitutional limitations"), available at https://www.pacourts.us/Storage/media/pdfs/20210519/010829-file-9556. pdf; Fifth Amended Administrative Order, ***In Re: 49th Judicial District Judicial Emergency Order***, 9/3/20, P.J. Ruest (extending the judicial emergency through December 31, 2020, while continuing the Rule 600 suspension "subject to constitutional limitations"), available at https://www.pacourts.us/Storage/media/pdfs/20210519/010900-file-9986. pdf; Sixth Amended Administrative Order, ***In Re: 49th Judicial District Judicial Emergency Order***, 12/29/20, P.J. Ruest (extending the judicial emergency through April 30, 2021, while continuing the Rule 600 suspension "subject to constitutional limitations"), available at https://www.pacourts.us/ Storage/media/pdfs/20210519/010957-file-10987.pdf; Seventh Amended Administrative Order, ***In Re: 49th Judicial District Judicial Emergency Order***, 4/23/21, P.J. Ruest (extending the judicial emergency through June 30, 2021, while continuing the Rule 600 suspension "subject to constitutional limitations"), available at https://www.pacourts.us/Storage/media/ pdfs/20210519/011028-file-11454.pdf; Request for Emergency Judicial Order, ***In Re: 49th Judicial District Judicial Emergency Order***, 6/25/21, P.J. Ruest (requesting authorization from the Pennsylvania Supreme Court to extend the 49th Judicial District's judicial emergency through August 31, 2021), available at https://www.pacourts.us/Storage/media/pdfs/20210827/ 153417-june25centrecountyrequestforemergencyjudicialorder.pdf; Order, ***In Re: 49th Judicial District Declaration of Judicial Emergency (Centre County)*** (Pa., filed 4/29/21) (granting an extension of the judicial emergency through August 31, 2021) (*per curiam*), available at https://www.pacourts.us/ Storage/media/pdfs/20210701/143630-39mm2020-centre-6-29-21order. pdf; Request for Emergency Judicial Order, ***In Re: 49th Judicial District Judicial Emergency Order***, 9/13/21, P.J. Ruest (requesting authorization from the Pennsylvania Supreme Court to extend the 49th Judicial District's judicial emergency through December 10, 2021) available at https://www.pacourts.us/Storage/media/pdfs/20210914/195322-sept.13-centrecounty-requestforemergencyjudicialorder.pdf; ***In Re: 49th Judicial***
*(Footnote Continued Next Page)*

- 13 -

*Barker*'s four-part constitutional analysis requires consideration of: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. **See** **Commonwealth v. Bradford**, 46 A.3d 693, 700-01 (Pa. 2012) (discussing *Barker*). "The particular interests the Sixth Amendment was designed to protect are the following: to prevent oppressive pretrial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired." **Commonwealth v. McCord**, 644 A.2d 1206, 1212 (Pa. Super. 1994).

As to the first two parts of the *Barker* test, Appellant argues that: (1) the Commonwealth provided no justification for not filing criminal charges against him until 171 days after the occurrence of his offenses; (2) his continued incarceration in a separate matter in Blair County did not justify delays including 77 days between the filing of the criminal charges and his preliminary arraignment and a 72-day delay between when his preliminary hearing was original scheduled for and then held; (3) there was a 64-day delay between when his pre-trial conference was first scheduled for and then held; and (4) the scheduling of his trial was delayed for a 36-day period because

---

**District Declaration of Judicial Emergency (Centre County)** (Pa., filed 9/14/21) (granting an extension of the judicial emergency through December 10, 2021) (*per curiam*), available at https://www.pacourts.us/Storage/media/pdfs/20210914/195322-sept.13-centrecounty-requestforemergency judicialorder.pdf.

the Commonwealth was unable to procure a witness. Appellant's Brief at 16-19.

In its opinion, the trial court advises that the delays in this case were "due to circumstances outside of the Commonwealth's control, as well as the actions taken and agreements made by Appellant." Trial Court Opinion, 8/17/23, 6. The court's recitation of the pre-trial procedural history highlight that the delays were caused by logistical issues caused by the on-going COVID-19 pandemic, a continuance granted *sua sponte* by the court, a continuance granted with the consent of both parties after a Commonwealth witness contracted the COVID-19 virus, and an incident where trial was unable to proceed because Appellant appeared for court in an impaired state. *Id.* at 2-3, 5-6.

For the third part of the ***Barker*** test, Appellant argues that he asserted his speedy trial rights by filing a petition for writ of *habeas corpus* on July 27, 2021 (189 days after the filing of the criminal complaint), and his dismissal motion on March 28, 2022 (433 days after the filing of the criminal complaint). Appellant's Brief at 19. The trial court instead notes that "Appellant never asserted his rights until after the delays agreed [to] or caused by Appellant." Trial Court Opinion, 8/17/23, 6. By doing so, the court is implicitly referring either to the dismissal motion or the arguments made at the hearing on that motion. The court appears to make no reference to the pre-trial *habeas* petition because there were no apparent speedy trial issues presented in that motion. Instead, Appellant alleged therein that there was insufficient evidence

for a *prima facie* case to support charges for forgery, identity theft, and theft by receiving stolen property. *Habeas* Petition, 7/27/21, ¶¶ 5-16.

With respect to the last part of the test, Appellant argues he sustained three forms of prejudice resulting from delay. First, he asserts that delay and the restraint on his liberty and lengthy pretrial incarceration resulting from delay caused him to suffer significant anxiety and concern. Appellant's Brief at 20. Second, he argues that the same restraint and incarceration hindered him from preparing a defense because, by the time of trial, he was no longer in a romantic relationship with Ms. Payne and, assuming there was no delay, Appellant suggests that Ms. Payne would have provided testimony for the defense at a preliminary hearing and trial. *Id.* at 20-22. Lastly, he claims that "the harm incurred by … prosecutorial delay manifested in the irretrievable loss of opportunity to receive a sentence partially concurrent with that which was being served in another jurisdiction." *Id.* at 21.

When addressing the possibility of prejudice, the trial court advises that "Appellant failed to articulate any cognizable prejudice he suffered as a result of the delay." Trial Court Opinion, 8/17/23, 6-7. The court never addresses the argument that delay hindered Appellant from securing testimony from Ms. Payne because, as we observed in our waiver holding above, Appellant never raised that argument to the trial court. The court also never addresses the lost opportunity for concurrent sentences argument. With respect to the suggestion that prejudice prevented Appellant from developing a defense, the trial court appears to address Appellant's separate claim raised below that

delay in the filing of his charges prevented him from timely securing surveillance videos that he assumed would have existed and showed his motorcycle driving prior to the beginning of the police camera footage that was presented at trial. *Id.* at 7; *see* N.T. 4/4/22, 11 (Appellant's argument at the dismissal hearing: "Had timely charges been filed, a thorough investigation could have been conducted, resulting in additional businesses, which could have assisted in [Appellant's] defense.").

"A finding in the defendant's favor of any one of the four factors, standing alone, does not constitute a speedy trial violation. Rather, each of the four factors are related and each must be weighed carefully in the court's evaluation of a criminal defendant's claim that his speedy trial rights were violated." *DeBlase*, 665 A.2d at 432 (citations omitted). Here, our careful review of Appellant's arguments, the trial court's opinion, and the certified record failed to show that any of the four factors of the *Barker* test should have weighed in Appellant's favor. Moreover, we discern that Appellant has failed to meet his burden of demonstrating that the trial court abused its discretion in denying his constitutional speedy trial rights claim.

Seeing that Appellant was tried in this case within twenty months of his arrest and, for sixteen of those months, the trial court was navigating through an ongoing judicial emergency caused by the COVID-19 pandemic, we can hardly fault the trial court for declining to consider the delay in this case as uncommonly long. Even assuming *arguendo* that the length of delay was unreasonable, the trial court did not determine that any of the continuances

in this case were the result of intentional delay or negligence on the part of the Commonwealth. That conclusion was also not an apparent abuse of discretion. Appellant presented no testimony at the hearing on his dismissal motion and the arguments of counsel and the certified record supported the trial court's conclusion that the delays in this case were either outside the control of the Commonwealth or were delays that Appellant assented to or caused by himself: some of the delay appeared to have been attributed to difficulties with transporting Appellant amid the ongoing pandemic, the trial court *sua sponte* granted a continuance of the preliminary hearing, a joint continuance occurred when a Commonwealth witness was unable to appear for trial due to a COVID-19 infection, and a trial date needed to be continued on an occasion when Appellant appeared in court in an impaired state.[7] N.T. 4/4/22, 13-16; 4/29/22, 10.

The timing of Appellant's assertion of his speedy trial rights was also an unpersuasive factor for him which his counsel acknowledged below. *See* N.T. 4/4/22, 10 ("It is acknowledged that this is perhaps the defense's weakest

_____

[7] While the parties failed to point to any definitive reason for the delay between Appellant's arrest and the filing of the criminal complaint (from August 2, 2020 to January 19, 2021), it is not lost on this Court that that period of time coincided with times when jails and prisons across Pennsylvania were being overwhelmed by the spread of the COVID-19 virus. *See* Paula Reed Ward, ***COVID Cases Continue to Ravage Pennsylvania Jails, Prisons***, Pittsburgh Tribune-Review, Dec. 11, 2020, available at https://triblive.com/news/pennsylvania/covid-cases-continue-to-ravage-pennsylvania-jails-prisons/; Gary Sinderson, ***Centre County Correctional Facility Limiting Taking New Inmates***, WJACTV, Jan. 11, 2021, available at https://wjactv.com/news/local/centre-county-correctional-facility-limiting-taking-new-inmates.

argument, as this is his first time invoking his Sixth Amendment right."). Here, the constitutional speedy trial rights claim was not presented until the hearing for Appellant's motion in which he originally requested dismissal under Rule 600 and after Appellant had caused a delay of trial.

Lastly, Appellant fails to show that the trial court abused its discretion by finding that he failed "to articulate any cognizable prejudice he suffered as a result of the delay." Trial Court Opinion, 8/17/23, 6-7. The only preserved portion of the appellate prejudice argument is that he experienced anxiety because of delay in this case. Appellant's Brief at 20 (assertion that Appellant was subjected to "extended restraint on his liberties with oppressive pretrial incarceration" and noting that "lengthy pretrial incarceration [can] cause a defendant to suffer significant anxiety and concern"), **compare with** N.T. 4/4/22, 11 ("Here, the Commonwealth has caused great anxiety for my client by having this criminal process drag on. My client has had to live his life for almost two years while the Commonwealth dragged their feet in bringing the charges, bringing my client to his pretrial hearings, bringing my client to his pretrial hearings, and finally bringing my client to trial.").

The appellate argument for prejudice such that delay in this case caused Appellant anxiety because it subjected him to lengthy pretrial incarceration has no support in the record. In a pretrial motion in *limine* filed by Appellee, the Commonwealth pointed out that Appellant incurred additional criminal charges in a separate case, after an incident in Blair County on October 30, 2020, which involved Ms. Payne as his victim of witness intimidation and

harassment. Commonwealth's Motion in *Limine*, 1/20/22, ¶¶ 58-59 & attached Exhibit B, Sentencing Order, ***Commonwealth v. Miller***, CP-07-CR-0000071-2021, 6/23/21. The sentencing order in that Blair County case indicates that Appellant received credit for time-served starting on October 30, 2022. ***Id.*** at attached Exhibit B, Sentencing Order, ***Commonwealth v. Miller***, CP-07-CR-0000071-2021, 6/23/21, 5. In comparison, the sentencing notes of testimony in the instant case suggested that Appellant was only entitled to a time-credit for two days of pre-trial incarceration. N.T. 7/6/22, 3. Accordingly, there was no basis for Appellant to now argue that delays in the instant case caused him anxiety by way of lengthy pre-trial incarceration – Appellant was already incarcerated from his offenses in another jurisdiction.

Upon our review of the certified record, we do not find anything objectionable about the trial court's application of the four-factor ***Barker*** test. Appellant fails to demonstrate that the trial court's denial of his constitutional speedy rights claim was an abuse of discretion. Accordingly, we decline to find any basis to grant relief.

Judgments of sentence affirmed.
Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/20/2023