J-S09017-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN SHAMELL BROWN | : | |
| | : | |
| Appellant | : | No. 1689 EDA 2025 |

Appeal from the Judgment of Sentence Entered June 3, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000376-2024

BEFORE: MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.: **FILED JUNE 3, 2026**

Shawn Shamell Brown ("Brown") appeals from the judgment of sentence imposed following his convictions for driving under the influence of controlled substances ("DUI"), driving while operating privilege is suspended or revoked, and illegal parking on a limited access highway.[1] We affirm.

We summarize the relevant factual and procedural history of this matter as follows. On May 13, 2022, at 11:20 p.m., Pennsylvania State Trooper Francis Vanore ("Trooper Vanore") responded to two reports of a stalled vehicle, without headlights or hazard lights enabled, in the right lane of travel on southbound Interstate 95 ("I-95"). While en route, police dispatch informed Trooper Vanore of a crash in the same area, possibly involving the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 75 Pa.C.S.A. §§ 3802(d)(2), 1543(a), 3533(a)(2)(vii).

stalled vehicle. At the scene, Trooper Vanore observed a red Lexus with extensive rear-end damage and a silver Toyota with heavy damage to the front hood. Trooper Vanore approached Brown, the operator of the red Lexus, and immediately noticed "a strong chemical odor emanating from . . . Brown's breath and person." N.T., 5/8/25, at 19. Based on his training and experience, Trooper Vanore recognized the odor as an indicator of narcotics use because "there's certain drugs and or drug categories that have a distinct chemical odor. . . [T]hat is what that odor to me was smelling [like]." *Id*. at 31. He further observed that Brown spoke "in incoherent sentences" with "slurred and thick speech" and that Brown was "unsteady on his feet while standing still" and "his gait was slow and sluggish while he was walking." *Id* at 19. Brown denied that his vehicle had been stalled on the highway and insisted that he was driving when the Toyota struck his vehicle from behind. *Id*. at 20. When asked for identification, Brown produced a suspended Pennsylvania driver's license. After initially indicating that he was all right, Brown requested emergency medical services ("EMS").

Trooper Vanore administered a standardized field sobriety test on Brown, the Horizontal Gaze Nystagmus ("HGN") test, which he conducted out of view of the mobile video recording ("MVR") camera on the trooper's patrol vehicle. Trooper Vanore then asked Brown to submit to a preliminary breath test ("PBT"), but after beginning the test, Brown declined to complete it. The MVR captured the PBT, which reflected that Brown's eyes were extremely glazed over. The MVR also showed that Brown's speech was slurred and

confused to the extent that Trooper Vanore had to ask Brown to repeat himself on several occasions. Brown also refused to consent to a blood draw. Although Brown had requested EMS evaluation, he refused ambulance transport to the hospital. Based on the totality of the circumstances, Trooper Vanore determined that Brown was under the influence of a drug which rendered him incapable of safely operating a vehicle and arrested him for driving under the influence of a controlled substance, driving while operating privilege is suspended or revoked, and illegal parking on a limited access highway. Trooper Vanore transported Brown to the police station and released him to his mother after processing. Brown remained free on bail throughout the pendency of this case.

The magisterial district court scheduled a preliminary hearing on July 7, 2022. On that date, the Commonwealth was ready to proceed but Brown requested a continuance to obtain an attorney. The court scheduled subsequent preliminary hearings for September 28, 2022, and December 8, 2022; however, on those dates, the Commonwealth requested continuances because Trooper Vanore failed to appear. On January 9, 2023, all parties were ready to proceed with the preliminary hearing; however, the magisterial district judge abruptly continued all cases that day. On February 16, 2023, the rescheduled date for the preliminary hearing, the magisterial district judge dismissed the matter when Trooper Vanore failed to appear.

On October 25, 2023, the Commonwealth refiled the criminal complaint against Brown, charging him with the same three offenses alleged in the first

complaint. On October 10, 2024, Brown filed a motion to dismiss based on a violation of his speedy trial rights under Pa.R.Crim.P. 600, as well as the United States and Pennsylvania Constitutions. We note that approximately two and a half years elapsed between the filing of the Rule 600 motion and the filing of the first criminal complaint on May 13, 2022.

On November 13, 2024, the trial court held a Rule 600 hearing. Both parties agreed that, barring extraordinary testimony that might arise during the hearing, there was no evidence the Commonwealth was purposely attempting to circumvent the time constraints of Rule 600. *See* N.T., 11/13/24, at 7. The Commonwealth then presented Trooper Vanore, who testified that he filed the initial criminal complaint on May 13, 2022, and that he appeared to testify at the first scheduled preliminary hearing on July 7, 2022. The court continued the matter at Brown's request so he could retain counsel. Trooper Vanore stated that he did not appear at the next preliminary hearing on September 29, 2022, and could not recall why he was not present. Subsequently, in November 2022, Trooper Vanore changed barracks, moving from Troop K in Delaware County to Troop M in Bucks County. At the next preliminary hearing date, December 8, 2022, Trooper Vanore failed to appear. He explained that he was unaware of the scheduled preliminary hearing because the court sent notice to his former barracks in Delaware County. Trooper Vanore testified that he appeared at the next scheduled preliminary hearing date, January 19, 2023, after receiving notification from the prosecutor. However, the magisterial district court continued all matters that

day due to a dispute in the courtroom. Trooper Vanore stated that he never received notification of the next hearing date in February. *Id*. at 9-14.

Next, Assistant District Attorney Nicholas McGuire ("ADA McGuire"), the prosecuting attorney who handled the matter after December 2022, testified that he learned of Trooper Vanore's transfer to Troop M and sent him a text message prior to the January 19, 2023 date to ensure his appearance. He stated that Trooper Vanore failed to appear at the next scheduled hearing, February 16, 2023, and recalled it was due to the trooper's unavailability. ADA McGuire testified that the district magisterial court dismissed Brown's matter because "the Judge typically gives you three chances. So because we had taken other continuances in between there, he dismissed the case." *Id*. at 19-22. The trial court held the matter under advisement and ultimately denied the Rule 600 motion on November 20, 2024.

The matter proceeded to a non-jury trial on May 8, 2025, approximately one and a half years after the Commonwealth filed the second criminal complaint. At trial, the Commonwealth presented the testimony of Trooper Vanore, who had extensive experience in recognizing the signs of drug use and impairment and in making DUI arrests, and who was qualified as an expert in field sobriety testing. The trooper explained why he arrested Brown as follows:

> [B]ased off the totality of the incident at hand, the call that we initially received [about] the crash, the observations of . . . Brown on the scene, his blank stare, the continued thick slurred speech[,] unsteady on his feet and slow and sluggish walk[,] [t]he continued incoherent sentences or having to repeat himself for me to

understand as well as the standardized field sobriety tests that I performed[,] I believed that . . . Brown was under the influence of a controlled substance to a degree to render him incapable of safely operating a motor vehicle.

N.T., 5/8/25, at 31. The trial court listened to two separate 911 calls reporting a stalled vehicle without lights in the right lane of I-95. The trial court also watched the MVR, which showed Brown's slurred speech, extremely glazed eyes, and confused demeanor.

Brown testified in his own defense and admitted that his vehicle had been stalled in a lane of traffic without any lights on because he "didn't have the hazards for [his] car." *Id*. at 50. He stated that he did not call 911 for help with the stalled vehicle because he did not want to get a ticket for driving with a suspended license. Brown explained, "Well, I tried to restart [the vehicle], but it just wouldn't start. Then it seemed like maybe a few minutes passed, and then I just had a huge impact from the back." *Id*. Brown testified that he refused the blood test because he believed Trooper Vanore, instead of a paramedic, was going to draw his blood and he did not feel this was safe. He denied ingesting any drugs or alcohol on the day of his arrest. *Id*. at 52.

The trial court credited the testimony of Trooper Vanore, determined that the MVR supported the trooper's testimony, concluded that Brown's testimony was not credible, and found Brown guilty of all charges. The trial court then imposed a sentence of six months' probation. Brown filed a timely notice of appeal and both he and the trial court complied with Pa.R.A.P. 1925(b).

Brown raises the following issues for our review:

1. Whether the evidence is insufficient to sustain the [DUI] (count one) conviction since the prosecution at trial failed to prove beyond a reasonable doubt that . . . Brown was under the influence of any drug or combination of drugs, let alone to a degree which impaired his ability to safely drive, operate, or control a vehicle?

2. Whether the [trial court] erred in refusing to dismiss . . . Brown's case because more than 365 days elapsed from the initial complaint's filing, the prosecution did not present sufficient evidence of excludable time or excusable delay, and it failed to exercise due diligence, in violation of [Rule] 600 and . . . Brown's state and federal constitutional rights?

Brown's Brief at 6.

In his first issue, Brown challenges the sufficiency of the evidence with respect to his DUI conviction. A challenge to the sufficiency of the evidence "presents a question of law, for which our standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Greene**, 340 A.3d 324, 332 (Pa. Super. 2025) (citation omitted).

When reviewing sufficiency challenges, we adhere to the following:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, this is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Nestor*, 314 A.3d 863, 873 (Pa. Super. 2024) (citation omitted).

The relevant DUI statute provides:

(d) Controlled substances. — An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

\* \* \* \*

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

Importantly, "[s]ection 3802(d)(2) does **not** require that any specific amount or specific quantity of the drug be proven in order to successfully prosecute under that section." **Nestor**, 314 A.3d at 874 (citation omitted, emphasis in original). "Instead, impairment evidence should be drawn from the totality of the factual circumstances." **Id**. "[T]he Commonwealth must simply prove that, while driving or operating a vehicle, the accused was under the influence of a drug to a degree that impaired his or her ability to safely drive that vehicle." **Greene**, 340 A.3d at 333 (citation omitted).

Brown argues that Trooper Vanore's "lay opinion is unsupported by the record," and that his belief that Brown was impaired, without "evidence of

chemical testing or drug evaluations," was "nothing more than a hunch and could not sustain the verdict." Brown's Brief at 26-28. He further avers that the evidence did not support Trooper Vanore's testimony that the strong chemical odor emanated from Brown's person, asserting "[i]t is just as plausible that something else, such as leaking chemicals at the crash site, caused it." *Id*. at 27. Brown contends that "[t]he prosecution failed to prove [he] ingested *any* substances let alone that a 'drug' impaired his ability to drive. *Id*. at 28 (emphasis in original). Brown also claims that the Commonwealth did not prove that Brown's behavior was due to drugs "as opposed to injury or shock" from the collision. *Id*..

The trial court considered Brown's sufficiency challenge and determined that it lacked merit. The court reasoned:

> The evidence presented at trial consisted first of the 911 calls made to the Pennsylvania State Police from two citizens reporting a vehicle stopped in the travel lane on [I-95] with its lights off; appearing to be disabled. Trooper Vanore, an expert in Field Sobriety Testing, with copious amounts of experience in drug recognition and DUI arrests, testified that by the time he arrived at the scene of the disabled vehicle, the vehicle had been rear ended. [Brown] reported to [Trooper Vanore] that he was driving the red Lexus and provided a suspended license. Trooper Vanore's first observations of [Brown] included a strong chemical odor emanating from his person. He was speaking in incoherent sentences with slurred speech; so slurred, [Trooper Vanore] had to ask him to repeat himself. He was unsteady on his feet and his gait was sluggish. . . . [Trooper Vanore] then began performing the HGN test and then [Brown] said he wanted EMS after initially saying he was [all right]. When Trooper Vanore attempted to perform a PBT, [Brown] began the test and then said he did not want to do the test.

The HGN was conducted out of the view of the dash camera on [Trooper Vanore's] patrol vehicle, however the PBT can be seen. What also can be seen on camera is the extremely glazed-over look in [Brown's] eyes, which [the trial court] noted. The video also shows just how slurred and confused [Brown] was when requesting to speak to a supervisor; requiring Trooper Vanore to ask him to repeat himself multiple times so that [Trooper Vanore] could understand what [Brown] was requesting. Based on the totality of the circumstances, as well as his experience in recognizing the signs of drug use and impairment, [Trooper Vanore] arrested [Brown] as he believed he was under the influence of a drug such that he was incapable of safely operating a vehicle. Also of note, after [Brown] had requested EMS, he was evaluated but then refused transport to the hospital and also refused [to] consent to a blood test.

Following [Trooper Vanore's] testimony, [Brown] took the stand and testified on his own behalf. He explained that his car stalled and that he did not call the police because he knew he should not have been driving with a suspended license. He claim[ed] he was rear ended by another car and the impact was "horrible" causing him to be "shaken up." Notably, Trooper Vanore testified that [Brown] told him at the scene that he was driving when he got rear-ended; not that he was stalled. He tried to blame his behavior not on being under the influence, but on his being shaken up from the accident. He then testified that he would have done a blood test but did not want [Trooper Vanore] to perform the blood test on him. He claimed that he would have performed the PBT but it was too painful to breathe hard enough to complete the test. These statements regarding the blood test and the PBT were just not credible. The [trial court] does not believe [Brown] was being truthful when he [said] he believed [Trooper Vanore] was going to conduct the blood test, nor does the [trial court] think [Brown] was being truthful when he [said] it hurt to breathe harder. These were excuses. He can be seen on the MVR barely making an effort to blow into the PBT before giving up and saying he did not want to do the test.

While the above consists of circumstantial evidence, our courts have consistently held that wholly circumstantial evidence is sufficient to prove beyond a reasonable doubt that a defendant is under the influence of a drug or combination of drugs to a degree that rendered him incapable of being in actual physical control of a motor vehicle. . . . [Trooper Vanore] testified credibly

- 10 -

as to his observations; the [trial court] was able to see the look in [Brown's] eyes; the 911 calls indicated he had been stopped in the lane of travel for no apparent reason; and [Brown's] testimony was riddled with excuses, contradictions, and untruths. Based on what was presented, the Commonwealth proved beyond a reasonable doubt that [Brown] had consumed drugs and had operated a motor vehicle.

Trial Court Opinion, 9/4/25, at 12-15 (citations omitted, paragraph break added).

Viewing the evidence in the light most favorable to the Commonwealth, we determine that the evidence was sufficient for the trial court to find Brown guilty of DUI on the basis that he was under the influence of a drug or combination of drugs to the degree which impaired his ability to safely drive, operate or be in actual control of the movement of the vehicle. Specifically, Trooper Vance, who testified as an expert in field sobriety testing, described Brown's slurred speech, incoherent sentences, blank stare, and unsteady gait. He further testified to the strong chemical odor emanating from Brown's body, which Trooper Vanore knew, from his training and experience, to be the distinct odor of certain drugs. In addition, the trial court viewed the MVR from the camera on Trooper Vanore's patrol vehicle and observed Brown's "slurred and confused" speech, noting that his eyes had an "extremely glazed-over look." Trial Court Opinion, 9/4/25, at 13. Although Brown offered excuses for his stalled vehicle, his failure to call for emergency assistance, and his suspicious condition and demeanor, the trial court found his testimony to be noncredible. Further, although Brown did not submit to any drug testing, we

emphasize that there is no requirement that a drug must be detected in the defendant's body in order to sustain a conviction under section 3802(d)(2). ***See Nestor***, 314 A.3d at 874. Rather, "impairment evidence should be drawn from the totality of the factual circumstances." ***Id***. Here, the totality of the circumstances, when viewed in the light most favorable to the Commonwealth, established beyond a reasonable doubt that Brown ingested a drug or combination of drugs that impaired his ability to safely drive, operate, or be in actual physical control of the movement of his vehicle. Thus, we conclude the record supports the trial court's finding of guilt with respect to Brown's DUI conviction. Accordingly, no relief is due on Brown's first issue.

In his second issue, Brown claims that the trial court should have dismissed the matter pursuant to Rule 600. He further claims that he suffered a violation to his constitutional right to a speedy trial under the United States and Pennsylvania Constitutions. Since Brown raises a constitutional speedy trial claim apart from the Rule 600 challenge, we will address this issue as two separate claims.[2]

In evaluating Rule 600 issues, our standard of review requires a determination as to:

> whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence of

---

[2] ***See Commonwealth v. Martz***, 232 A.3d 801, 812 (Pa. Super. 2020) (holding that the court must conduct a two-part inquiry "in cases where an appellant presents independent claims premised on both the procedural rule and the constitutional guarantees").

the record, viewed in the light most favorable to the prevailing party. An abuse of discretion is not merely an error in judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused.

*Commonwealth v. Womack*, 315 A.3d 1229, 1237 (Pa. 2024) (citations omitted). "The proper scope of review . . . is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial court]. An appellate court must view the facts in the light most favorable to the prevailing party." *Commonwealth v Lapaglia*, 320 A.3d 745, 750 (Pa. Super. 2024) (citation omitted).

Rule 600 requires that a trial "in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). For purposes of this calculation, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

However, in a two-complaint scenario such as the case at bar, our Supreme Court has explained:

> Where the Commonwealth files two different criminal complaints against a defendant, the Commonwealth receives the benefit of the filing date of the second complaint for Rule 600 purposes where it demonstrates that it acted with due diligence between the period in which the complaints were filed. The Commonwealth

must also establish that the filing of the second complaint was necessitated by factors beyond its control and that its actions were not an attempt to circumvent or manipulate the speedy trial requirements.

*Womack*, 315 A.3d at 1241. "The Commonwealth's actions after the withdrawal or dismissal of the first complaint only become relevant for Rule 600 purposes if the Commonwealth was forced to file a second complaint because it failed to exercise due diligence in prosecuting the first complaint." *Commonwealth v. Mullen*, 341 A.3d 799, 806 (Pa. Super. 2025). To determine whether the Commonwealth should receive the benefit of the filing date of the second complaint, the trial court must consider "whether the Commonwealth's basis for filing the second complaint was precipitated by its lack of diligence in prosecuting the first complaint. That is because, more often than not, two-complaint cases involve a situation where the Commonwealth re-files an identical complaint due to some barrier in prosecuting its initial complaint." *Womack*, 315 A.3d at 1240 (citation omitted). It is the Commonwealth's burden to demonstrate due diligence by a preponderance of the evidence to avail itself of an exclusion under Rule 600. *See id*. at 1239. "Due diligence is fact specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forward a reasonable effort." *Id*. at 1239-40.

Brown argues the trial court erred when it denied his Rule 600 motion because the Commonwealth "did not do everything reasonable within [its]

power to guarantee a prompt trial, and the delay was not beyond the prosecution's control." Brown's Brief at 20-21 (quotation marks omitted). Brown avers that Trooper Vanore's "repeated absences caused substantial delay" and that Trooper Vanore "did not update his address or properly monitor the case, and the prosecution did not take adequate steps to fulfill its duty to notify him." *Id*. at 20. Brown further argues that "[t]he court mailed notices, the barracks should have ensured [Trooper Vanore] received them, and the prosecution had the ability to secure [Trooper Vanore's] presence but failed to do so." *Id***.**

The trial court considered Brown's Rule 600 challenge and determined that it lacked merit. The court reasoned:

> [I]n the instant matter, the Commonwealth was duly diligent in prosecuting the first complaint. The matter was promptly scheduled for a preliminary hearing on July 7, 2022, following the May 13, 2022 arrest date. At that time, [Brown] requested a continuance for counsel. The matter was rescheduled, and Trooper Vance was absent on September 29, 2022. At the December listing, Trooper Vanore was not present because he was not aware of that listing. He explained credibly that he did not receive notice of that date and believed this was because notice had been sent to his prior assignment at Troop K in Media when he had been reassigned to Troop M in Dublin. This was not a deliberate act by the Commonwealth to send notice to the incorrect [b]arracks; the Commonwealth was without knowledge of [Trooper Vanore's] transfer. Once [the prosecutor] discovered Trooper Vanore moved, he texted [him] with notice of the January 2023 date.
>
> At the January date, the Commonwealth was once again ready to proceed with its witnesses, but the court continued the entire afternoon list of cases. Trooper Vanore explained he never received another notice for this matter and the court found that to be credible. It is not clear why Trooper Vanore did not receive

- 15 -

notice of the February 13, 2023 date, but he failed to appear and [the magisterial district judge] dismissed the matter.

Throughout the life of the case, the Commonwealth was diligent in attempting to get their witness to court. Rule 600 does not require "perfect vigilance and punctilious care, but merely a showing that the Commonwealth has put forth a reasonable effort." There was only one listing, September 29, [2022,] where Trooper Vanore failed to appear and there was no real evidence why. The other two dates where [Trooper Vanore] failed to appear were dates where the court or the Commonwealth attempted to notify [Trooper Vanore] of the date, but it was not received for one reason or another. As such, the Commonwealth was diligent in prosecuting the first complaint and therefore the time between dismissal of the first complaint, February 16, 2023, and the refiling of the second complaint, October 23, 2023[,] is irrelevant. From October 23, 2023 to October 10, 2024, when the motion to dismiss was filed, 365 days had not elapsed and therefore the case was not at risk for dismissal under Rule 600 on the second complaint.

Trial Court Opinion, 9/4/25, at 6-7 (paragraph breaks added, unnecessary capitalization omitted).

After careful review, we discern no abuse of discretion in the trial court's denial of Brown's Rule 600 motion. The record shows that the Commonwealth was ready to proceed with the preliminary hearing on July 7, 2022; however, Brown requested a continuance to obtain counsel. At the next scheduled hearing, September 28, 2022, Trooper Vanore inexplicably failed to appear. On December 8, 2022, Trooper Vanore did not appear to testify because he did not receive notice of the hearing. He credibly testified at the Rule 600 hearing that he transferred barracks in November 2022 and that the court sent the notice to the incorrect address. Trooper Vanore was present at the next preliminary hearing on January 9, 2023; however, the district magisterial

court abruptly continued all matters that day. Ultimately, on February 16, 2023, the district magisterial court dismissed the matter after Trooper Vanore again failed to appear due to lack of notice.

Thus, the district magisterial court continued four out of the five scheduled preliminary hearings dates — July 7, 2022, December 8, 2022, January 9, 2023, and February 16, 2023 — for reasons that were beyond the Commonwealth's control. With respect to the September 28, 2022 hearing date, Trooper Vanore testified that he could not recall why he did not appear. While it is unfortunate that the Commonwealth was unable to provide a reason for Trooper Vanore's failure to appear, we emphasize that due diligence "does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forward a reasonable effort." **Womack**, 315 A.3d at 1239-40. Here, we conclude that the Commonwealth put forth a reasonable effort to prosecute the first criminal complaint, where all but one of the continuances were for reasons beyond the Commonwealth's control. Furthermore, we determine that there is no evidence that the Commonwealth purposely attempted to circumvent the time constraints of Rule 600. Indeed, Brown conceded this point at the Rule 600 hearing. **See** N.T., 11/13/24, at 7. Based on the foregoing, we agree that the Commonwealth is entitled to the benefit of the filing date of the second complaint for purposes of Rule 600. Therefore, we conclude the trial court did not abuse its discretion when it denied Brown's Rule 600 motion as 365 days had not elapsed between the

filing of the second complaint and the date of the Rule 600 motion. Accordingly, no relief is due on Brown's second issue.

In his final issue, Brown claims that the delay between the filing of the first criminal complaint and the date of trial violated his constitutional right to a speedy trial under the United States and Pennsylvania Constitutions. Where a defendant has raised a separate constitutional-based speedy trial issue apart from the Rule 600 issue as a basis for the motion to dismiss, we employ a two-step inquiry: "(1) whether the delay violated [Rule 600]; and if not, then (2) whether the delay violated the defendant's right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution." *Commonwealth v. DeBlase*, 665 A.2d 427, 431 (Pa. 1995) (citation omitted). "In evaluating speedy trial issues, our standard of review is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." *Womack*, 315 A.3d at 1237.

"The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution guarantee a criminal defendant the right to a speedy trial." *DeBlase*, 665 A.2d at 432. "The speedy trial guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the

ability of an accused to defend himself." ***Commonwealth v. Barbour***, 189 A.3d 944, 954 (Pa. 2018) (citation and quotation marks omitted). To determine whether an unconstitutional speedy trial violation occurred, the court must consider: (1) whether the delay was uncommonly long; (2) the reasons for the delay; (3) whether the defendant asserted his constitutional rights; and (4) whether the defendant suffered prejudice because of the delay. ***See Barker v. Wingo***, 407 U.S. 514 (Pa. 1972); ***see also DeBlase***, 665 A.2d at 432. Further,

> [a] finding in the defendant's favor of any one of the four factors, standing alone does not constitute a violation. Rather, each of the four factors are related and each must be weighed carefully in the court's evaluation of a criminal defendant's claim that his speedy trial rights were violated.

***DeBlase***, 665 A.2d at 432 (citations omitted).

Brown argues the delay between the filing of the first complaint and his trial violated his right to a speedy trial because:

> (1). . . Brown's case was delayed for over 600 days, (2) [Trooper Vanore's] repeated and inexcusable failures to show up for scheduled court listings caused the dismissal [of the first complaint] and considerably prolonged the case, where the prosecution improperly relied on the court to notify him, (3) . . . Brown asserted his constitutional rights to a speedy trial, and (4) the substantial delay prejudiced him, as he languished under pretrial bail conditions during that time.

Brown's Brief at 23.

The trial court considered Brown's constitution-based speedy trial claim and determined that it lacked merit. The court reasoned:

In this instant matter, [Brown] filed his motion to dismiss on October 10, 2024. The original complaint had been filed on May 13, 2022. This is approximately two-and-one-half years. This court does not consider that an extremely significant amount of time. However, assuming *arguendo*, that it is a sufficiently lengthy delay to trigger further inquiry, this court will address the [four] factors set forth in **Barker v. Wingo**. The first step is to balance the length of delay and the reason for delay. As discussed above, the reason for delay was due to various mistakes in notifying the Commonwealth's witness, Trooper Vanore[,] and also due to the [magisterial] district court's cancellation of its lists. Additionally, the first complaint was dismissed by the [magisterial district judge] after three perceived failures of the Commonwealth to put forth its case, but this court believes that position of "three strikes and [you're] out" is unreasonable, especially given the underlying reasons for delay and the due diligence by the Commonwealth.

[Brown] did properly assert his right regarding speedy trial so that factor is not at issue. The final factor in the **Barker v. Wingo** balancing test is the resulting prejudice to the interests meant to be protected by speedy trial. The speedy trial rule exists, in part, to prevent oppressive incarceration and to minimize the possibility that delay will impair a defendant's ability to [present] a defense. In the instant matter, [Brown] was not incarcerated and thus, one of the major interests the speedy trial rule is meant to protect is not even applicable. Furthermore, there was no real argument put forth from the defense regarding how the delay prejudiced [Brown's] ability to put forth a defense in this matter, nor does the court see any. As such, this court cannot see how [Brown's] constitutional rights to due process were violated.

Trial Court Opinion, 9/4/25, at 8 (unnecessary capitalization omitted).

After careful review, we conclude that the trial court did not abuse its discretion when it found no violation of Brown's constitutional-based right to a speedy trial. Applying the **Barker** four-part balancing test set, we agree with the trial court that the total length of delay between the first criminal complaint and the date Brown filed his Rule 600 motion, approximately two

- 20 -

and a half years, was not excessive, particularly since Brown remained free on bail throughout the pendency of this case. Next, we conclude that the delay was not due to the Commonwealth's lack of diligence. As discussed above, in every instance but one, the district magisterial court continued the case for reasons beyond the Commonwealth's control. We further determine that Brown asserted his constitutional right to a speedy trial by raising it his Rule 600 motion. Lastly, we conclude that there is no evidence that the delay prejudiced Brown. Brown was not incarcerated during the pendency of the case, and he made no argument that the delay impaired the preparation of his defense. Indeed, his only claim of prejudice is that he "languished under pretrial bail conditions;" however, he did not specify how the pretrial bail conditions negatively impacted him. Thus, after reviewing the factors set forth in **Barker**, we conclude there was no violation of Brown's constitutional right to a speedy trial. Accordingly, no relief is due on Brown's final issue.

For the foregoing reasons, we conclude that none of Brown's claims merit relief. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2026

- 21 -